Y. 550. "No particular form of words is necessary in order to constitute notice in such cases, nor is it even necessary to give a written notice. It is sufficient that the party against whom ultimate liability is claimed is fully and fairly informed of the claim, and that the action is pending, with full opportunity to defend or to participate in the defense. If he then neglects or refuses to make any defense he may have, the judgment will bind him in the same way and to the same extent as if he had been made a party to the record." Oceanic Steam-Nav. Co. v. C. T. E., 144 N. Y. 663, 39 N. E. 361; Carleton v. Lombard, Ayres & Co., 149 N. Y. 131–151, 43 N. E. 422; Washington Gaslight Co. v. District of Columbia, 161 U. S. 316–330, 16 Sup. Ct. 564, 40 L. Ed. 712.

It seems to me, therefore, very clear that Coykendall was a person interested in the event, within the meaning of section 829. The plaintiff, the executor and trustee of the Cornell estate, is a person who derived his interest from, through, or under the deceased person. By the use of the words, "against a person deriving his title or interest from, through or under a deceased person, * * * by assignment or otherwise," it was intended to protect all persons succeeding to the right, title, or interest, or standing in the place or stead, of the deceased person, against testimony as to communications made by him to the adverse party. The words "or otherwise" were intended to embrace and cover every and all means and manner of succession or devolution, in addition to that by assignment. The plaintiff in this action is the successor in office to a deceased executor, and has succeeded to the right, title, and interest of everything that he acquired as executor and trustee during his lifetime. While the office of Horace G. Young as executor and trustee was not, perhaps, derived from, through, or under Edwin Young, but from the will of Thomas Cornell, yet the cause of action here arose out of and from the act of Edwin Young as executor, and was derived from his action, so that the title of the plaintiff to and his interest in the subject-matter of the action may properly be said to have been derived from, through, or under Edwin Young deceased. The testimony received was therefore, I think, clearly within the spirit and letter of the rule prohibiting the reception in evidence of a communication with a person since deceased, and should have been excluded. It was material evidence, and must have had its influence upon the trial, and for the error in its reception the judgment should be reversed.

Judgment reversed upon questions of law only, referee discharged, and a new trial granted; costs to abide the event. All concur; PARKER, P. J., in result.

(31 Misc. Rep. 35.)

SMID v. BIERNARD et al.

(Supreme Court, Trial Term, Kings County. March, 1900.)

1. LIBEL AND SLANDER—WORDS NOT LIBELOUS PER SE.

A publication of a retail baker that he had declared a fight against a bakers' labor union, and refused to employ its members, because they would not work for him for 50 cents a day which he offered, is not libelous per se, as he had a right to do what it says he did.

2. SAME.

The statement that he wants men to work for 50 cents a day cannot be deemed a libel per se in that it holds him up to contempt for offering starvation wages, for the reason that the court cannot take judicial notice of the local rate of wages for the different grades of work in bakeries, and there is no allegation in the complaint on that head.

3. SAME—PLEADING AND PROOF—SPECIAL DAMAGES—LOSS OF CUSTOMERS, ETC.

In actions for slander or libel, if the words be not a slander or libel per se, the complaint states no cause of action unless it alleges special damage, i. e. the particular contracts, sales, employment, customers, patients or clients (or as the case may be) lost by reason of the publication.

4. SAME—GENERAL AND SPECIAL DAMAGES—PRESUMPTION.

In the case of a libel or slander per se, the law presumes that it does general damage to the plaintiff, but in the case of words not a slander or libel per se, the law will not presume it does any damage whatever, and therefore such special damage must be alleged and proved in order to make the words actionable.

5. SAME—PLEADING—ALLEGATION—GENERAL DAMAGES.

An allegation in the complaint that the plaintiff "has suffered great loss and damage in his business," is not an allegation of special damage, but only of general damage, i. e. the damage which the law will presume to be caused by a slander or libel per se.

6. SAME—DAMAGES—GENERAL AND SPECIAL DISTINGUISHED.

The damage which the law presumes a slander or libel per se will cause to general character or to business or calling is called general damage, and can be recovered under a general allegation of damage; while special damage can be recovered only under an allegation of special damage.

7. SAME—PLEADING—EQUIVOCAL WORDS—MEANING—ALLEGATION.

In the case of words which are equivocal, or fairly capable of two meanings, one libelous and the other not, the libelous meaning must be pleaded in the complaint, or else no cause of action is alleged. It is not for the defendant to attribute the libelous meaning to his own words, and then plead to them in such meaning.

8. SAME—PLEADER BOUND.

If there be no equivocalness or ambiguity in the words, but the plaintiff nevertheless in his complaint pleads a particular meaning to them, and no other meaning, he is bound to such pleaded meaning on the trial, and can change to no other, and that although the words standing alone are slanderous or libelous per se; for the issue joined in the case is upon such pleaded meaning only.

Action by Josef Smid against Joseph Bernard and others for libel. The complaint was dismissed for failure to state a cause of action. Motion for a new trial. Denied.

Motion for a new trial. Action for damages for libel. The complaint was dismissed as not stating facts sufficient to constitute a cause of action. It alleges two causes of action, each based on a different article published in the newspaper of the defendants in the Bohemian language. The articles purport on their face to be communicated to the newspaper by the officers of local bakers' union No. 22, of the International Union. The plaintiff is engaged in the business of retail baker in the Bohemian quarter of New York City.

The translation agreed upon of the publication alleged in the first cause of action is as follows: "(Communication.) For the consideration of the public living in the Bohemian quarter where most of our own countrymen, union people live. It is a week since that baker boss Jos. Smid of No. 1,372 Avenue A declared a fight against us, the Bohemian Baker's Union No. 22 of the International Union that he does not want to employ workmen belonging to the above-named union, because they refuse to work ten hours for 50 cents; he will wait, it is said, when workmen get cheaper. You Mr. Smid will not

ruin the Baker's Union No. 22. Mr. Smid, no one from our midst bears the name of Josef Smid to be a strike-spoiler at a Mr. Hoker, or work for less than union wages for citizen Sykora, as did the individual who answers to the name of J. Smid, the present baker's boss of No. 1,372 Avenue A. The Baker's Union No. 22 of the International Union has always taken into consideration that you were a small business man and as such should have a chance to make a living, but we were disappointed in you. We, therefore, ask the esteemed public in the Bohemian quarter to pass by the bakery store of citizen Smid at No. 1,372 Avenue A until he makes up with the Baker's Union No. 22. In esteem on behalf of Union No. 22 International Union, John Jicha, Sec'y."

And of that alleged in the second is as follows: "(Communicated.) New York, April 16, 1898. To the Editor of the New Yorske Listy: We heard the expression of a certain citizen, a workingman too, (we shall not divulge his name for the time being) concerning the fight at citizen Smid, Baker boss, at No. 1,372 Avenue A, that said fight is unjust. Citizens we know where in pinches us. Did you ever work anywhere 10 hours, in a tobacco factory for 50 cents, as citizen Smid asked from us. We think not, but if so we shall not do it because we are union people and support union products. Therefore, we hope, citizen, that this will suffice you and that you will not meddle with our affairs and will strive to keep your own threshold clean first, or, has that care been placed on your shoulders by citizen Smid, perchance, for a bun. And now a word or two with you, Mr. Smid. You announce to the world that your label is the true union one and that it comes from (baker) Paul Kostka. By this you will not deceive all the public, only a small minority thereof, for our label contains a shock bearing your resemblance. The International Union had always one and the same label, which is before the public to this day and that label is duly registered; and it cannot be counterfeited Mr. Smid. We therefore ask the respected public in the Bohemian quarter to avoid the business of Mr. Smid. For the Bakers Union No. 22. Committee."

The allegation of damage is that by such publications "the plaintiff has been and still is greatly injured in his good name, fame and credit and brought into public scandal, infamy and disgrace, and held up to public hatred, ridicule and contempt, and has suffered great loss and damage in his business, and has been brought into poverty, shame and disgrace, to the damage of the plaintiff," etc.

George W. Weiffenbach, for plaintiff.
Michael J. Joyce, for defendants.

GAYNOR, J. The publication set out in the first cause of action purports to be a communication in behalf of local bakers' union No. 22 of the International Union, and consists only of statements that the plaintiff had "declared a fight" against the said bakers' union, and refused to employ its members, because they would not work for 50 cents a day, which he offered, and would wait till workmen got cheaper; and also that the plaintiff once worked for less than union wages; and concludes with a request to the public in the Bohemian quarter to pass by the plaintiff's bakery store until he makes up with the union.

This is not a libel per se against the plaintiff either in his general character or as touching him in his business. He had a legal and moral right to do what it says he did; and a publication of that kind is not a libel per se. Homer v. Engelhardt, 117 Mass. 539; People v. Jerome, 1 Mann. (Mich.) 142; Sinsheimer v. United Garment Workers, 77 Hun, 215, 28 N. Y. Supp. 321; Reeves v. Templar, 2 Jur. 137; Cox v. Cooper, 12 Wkly. Rep. 75; Miller v. David, 22 Wkly. Rep. 332. Nor can the statement that he wants men to work for 50 cents a day be deemed a libel per se in that it holds him up

to contempt for offering starvation wages. If it were permissible to so hold in any case, the court could not do so here without taking judicial notice of the local rate of wages for the different grades of work in bakeries in the Bohemian quarter of New York City, for there is no allegation in the complaint on that head; whereas such notice could not even be taken of the rate of wages in bakeries generally. It follows that the first cause of action was properly dismissed, for a publication not libelous per se cannot be a cause of action unless special damage be pleaded as having been caused by it; and there is here no allegation of special damage. The allegation that the plaintiff "has suffered great loss and damage in his business" of baker, is not an allegation of special damage, but only of general damage. A libel per se may be such against one in his general character, or only because it touches him in his business, occupation or profession, or for both reasons. The law presumes that a libel per se does damage. The damage thus presumed is called "general damage"; and under a general allegation in the complaint of damage to character, or to business, or to both, such general damage may be proved. If such a libel be of such a character as to touch the person libeled in his business or profession, then under a general allegation of damage thereto, evidence of a general falling off of business or income is admissible. This is so because the law presumes that a libel per se which touches one in his business or profession will cause such general damage, i. e., falling off, and therefore such evidence may be given to help to show its extent. As Mr. Odgers says in his scientific and discriminating work on Libel and Slander, as "the law presumes that the plaintiff is injured in his business, so that the jury must give him some damages, evidence as to the nature and extent of the plaintiff's business before and after publication is clearly admissible to enable the jury to fix the amount." Odgers, Lib. & Sland. (2d Ed.) pp. 230, 231. Such evidence is not necessary in order to have the question of such general damage to business or profession submitted to the jury, but it may show such damage to be greater than the jury would have presumed if it had not been given.

But in the case of a publication which is not a libel per se, the law will not presume that it does damage of any kind. It therefore follows that a complaint for such a publication states no cause of action unless it alleges special damage, that is to say, specific items of damage, caused by it. Such special damage is (in a word) the gist of the action, and unless it be alleged no cause of action is alleged. The particular contracts, sales, employment, customers, patients or clients lost must be alleged; and unless the plaintiff prove such special damage he will be nonsuited, for he cannot have recourse to general damage, for general damage is not allowed in the case of a publication not a libel per se. Evidence of general damage, i. e., of a general falling off of business or income, cannot be received in such an action, because the law will not presume that such falling off was caused by the publication instead of by any of the numerous possible causes or by nothing. And the customer, patient, client, and so on, alleged to be lost or not obtained because

of the publication, must be examined as a witness to show that he
was influenced by such publication, for the mere fact that he quit
or was not obtained is no evidence, and raises no presumption, that
the publication was the cause of it. And this same rule of pleading
and of evidence also applies to special damage in an action for a
libel per se, if such damage be there sought in addition to general
damage. Odgers, Lib. & Sland. (2d Ed.) pp. 220–233; Cruikshank v.
Bennett, 30 Misc. Rep. 232, 62 N. Y. Supp. 118; Hallock v. Miller,
2 Barb. 630; Tobias v. Harland, 4 Wend. 537; Squier v. Gould, 14
Wend. 159; Weiss v. Whittemore, 28 Mich. 366.

This rule of pleading and of evidence in actions for damages for
libel or slander was so well understood and established in England
and here that we find little misunderstanding or misappliction of it,
and what there is of late seems to arise from momentary inad-
vertence. For instance, it seems odd for the clear English case
of Evans v. Harries, 26 Law J. Exch. 31, to be cited for the propo-
sition that there are many cases to which this rule (i. e., the rule
that special damage has to be pleaded in the manner above specified)
does not apply, and in which a general allegation of loss of custom,
trade, or business earnings is sufficient. Evans v. Harries was the
case of a slander per se touching the plaintiff in his business of
innkeeper, and, as we have seen, general damage to business is
presumed by the law in the case of such a slander or libel per se,
and may therefore be proved under a general allegation of damage
to business; and that was the precise thing, and the only thing,
decided in the case. The judges there did not contradictorily class
general damage to business in the case of a slander or libel per se
as special damage, and then with even stranger contradiction say
it may be proved under a general allegation of damage. On the
contrary, they recognized the consistent and obvious proposition
that such general damage comes under the head of general damage,
and may therefore be proved under a general allegation of dam-
age to business. There was there an allegation of general damage
to the plaintiff's business, and the court held that a general falling
off of business was general damage, and could therefore be proved
under the allegation of general damage. But if the words had not
been a slander per se, such general falling off of business could not
have been proved at all, for the law would not presume that it
resulted from such words. No such question arose in Evans v.
Harries, but only the question whether in the case of a libel or
slander per se to one's business, a general falling off therein could
be proved under a general allegation of damage thereto; and the
objection to such evidence was overruled. Martin, B., made the
point plain by saying:

"Suppose a biscuit maker in Regent street is slandered by a man saying his
biscuits are poisoned, and in consequence no one enters his shop. He cannot
complain of the loss of any particular customers, for he does not know them;
and how hard and unjust it would be if he could not prove the fact of the
loss under a general allegation of the loss of custom."

Under such "general allegation" the court said that such general
loss or damage could be proved. Why? Because the words would

constitute a slander per se to the biscuit maker in his business, from which the law would presume such general damage to his business, and therefore he would be permitted to give evidence of the extent of such general damage under the general allegation of damage. But if the words were such as not to constitute a slander per se, the law would not permit a presumption of damage, and therefore the plaintiff could get no damage except by pleading and proving special damage. And if he could show no special damage, his case would present no hardship, for that he could show none would show there was none. Words not libelous or slanderous per se are to the court and to people in general apparently harmless, and one who claims that he is nevertheless hurt by them must plead and show how and in what particulars. And as words apparently harmless can do one no general damage, he must therefore allege and show special damage which they did him in order to make them actionable. "If the plaintiff cannot give the names of those who have ceased to deal with him, or cannot prove that their so ceasing is due to the defendant's words, he must be nonsuited; although there has in fact been a falling off in his business." Odgers, Lib. & Sland. (2d Ed.) p. 227. Instead of there being many cases to which this rule of pleading and of evidence in respect of special damage does not apply, it will be found on examination, it seems to me, that there is not one, though an inadvertent remark to that effect may of late be found here and there. The rule is that only "general" damage can be proved under a "general" allegation of damage, and that "special" damage can be proved only under an allegation of "special" damage. When the difference between what is "general damage" and what is "special damage" is kept in mind, the rule is always plain. But when general damage is inadvertently called special damage, then the rule is confused. Then only do we meet with the contradiction in terms, viz., that special damage may be proved under an allegation of general damage. For instance, while the admission of evidence of a general falling off of business, under a general allegation of damage to business, was sustained in Bergmann v. Jones, 94 N. Y. 51, the learned judge writing inadvertently speaks of such general falling off as special damage, whereas it was not special damage, but, on the contrary, the general damage which the law presumed would come to the plaintiff in his business from the libel per se in that case. If the plaintiff in that case had sought damage for the loss of a particular contract, business transaction, or customer, that would have been special damage, and he would not have been permitted to prove it for not having specially pleaded it.

It may be well to put in a reminder that there is a limitation to the general rule that in the case of a libel or slander per se touching one in his business or profession the law presumes that it causes general damage thereto, i. e., a general falling off therein. If the publication be not general, but only to one or a few persons, of course it cannot cause such general damage beyond the loss of their custom; for the persons to whom the publication is made are necessarily the only ones who could be influenced by it; and it must be borne in

mind that the publisher of defamatory matter is not liable for its subsequent repetition by others. As oral slanders are almost invariably spoken in the hearing of only one or a few, this limitation might be said to be the rule with them; nevertheless it seems to have been quite generally lost sight of. In Evans v. Harries, for instance, the learned judges seem not to have thought of it. In the supposed case of the biscuit maker, with his thousand little transient customers, if the slander were uttered in the hearing of only one or a few of them, that could create no presumption of general damage to his business beyond the loss of the custom of such one or few. And yet the judges leave two false impressions, one that a slander uttered in the hearing of only one or a few of them could cause all to stay away, and the other that damage could be got for such slander beyond the loss of the custom of those who heard the defendant utter it.

The publication set out in the second cause of action is of the same tenor as that in the first, excepting this: "And now a word or two with you, Mr. Smid. You announce to the world that your label is the true union one, and that it comes from (baker) Paul Kostka. By this you will not deceive all the public, only a small minority thereof, for our label contains a shock bearing your resemblance. The International Union had always the same label, which is before the public to this day and that label has been registered; and it cannot be counterfeited Mr. Smid." It is claimed for the plaintiff that this accuses the plaintiff of counterfeiting the said union's label, or of using it on his goods to defraud, and is therefore a libel per se, as that would be a criminal offense. Penal Code, §§ 364, 438a. But on the contrary, the purport of the words seems to be that the label the plaintiff uses is altogether different to the label the said union uses, does not resemble it, but that he claims that it is the true International Union label. The real accusation seems to be, not that the plaintiff is counterfeiting, simulating, or using the union's label, but that he is falsely claiming that the dissimilar label he uses is the "true union one," and thereby deceiving "a small minority" of the public. That the words charge such criminal offense is the only meaning claimed by the plaintiff; and as it is alleged as the meaning in the complaint, by way of innuendo, as it is called, none other could be claimed by him. To seek for the true meaning of the words would therefore serve no purpose, so long as they do not bear the said meaning pleaded by the plaintiff. It is a rule of pleading that where the words are equivocal or fairly capable of two meanings, one libelous and the other not, the libelous meaning must be pleaded in the complaint as the one conveyed by the defendant, or else no cause of action is alleged, as in Nealon v. Frisbie, 11 Misc. Rep. 12, 31 N. Y. Supp. 856; Reeves v. Templar, 2 Jur. 137; McGregor v. Gregory, 11 Mees. & W. 287. It then becomes a question for the jury to say which meaning was conveyed. The rule is indispensable for the one reason, if no other, that the defendant cannot plead the truth as a defense until he is informed of the meaning which he is called upon to plead to. It is not for him to attribute a libelous rather than an innocent meaning to his

own words. And where there is no equivocalness or ambiguity there is no need of an innuendo in respect of the meaning; but if the plaintiff nevertheless plead a meaning, he is bound thereby at the trial, as in the case of Butler v. Wood, 10 How. Prac. 222; affirmed on appeal. The everyday rule of certainty in pleading holds him. By pleading a meaning he rejects every other meaning, and the defendant is called upon to plead to that meaning only. If the meaning the plaintiff has pleaded be not libelous, he must be nonsuited even though the words standing alone have a libelous meaning, for he reduced his complaint to the meaning pleaded, and can shift to no other. It would therefore serve no purpose here if the court were to point out that the words have a libelous meaning standing alone other than the meaning pleaded and insisted on by the plaintiff.

It must be borne in mind that we are dealing with a question of pleading, and that therefore the other rule, that when the words are equivocal or ambiguous the question of their meaning is one of fact for the jury, has no present application, even if the words here be such. It is a question of fact for the jury when it gets that far. And on the question of the rule that the meaning pleaded by the plaintiff binds him, it needs to be borne in mind that the decisions in jurisdictions where they plead the libel or slander in two counts (as formerly in this state), the first without the innuendo as to meaning and the second with it, have no application to the present case. There the pleaded meaning in the second count failing, they fall back on the first count, and recover, if they can, on the meaning of the words standing alone. And the same caution applies, of course, to the decisions in particular cases anywhere where the complaint was in that form. In other words, apart from the innuendo there is a sufficient complaint in such cases to raise an issue on the words standing alone, and therefore to require the defendant to plead accordingly; whereas in the case of a complaint based solely on an alleged meaning (which is the case here), there is not. In other words, again, if (as the cases say) the "complaint" be sufficient without the pleaded innuendo, such innuendo may be disregarded; but otherwise not.

The motion for a new trial is denied.