(42 Misc. Rep. 414.)

## HUME v. KUSCHE.

(Supreme Court, Trial Term, Westchester County. January, 1904.)

**1. SLANDER—COMPLAINT.**
    In an action for slander of one in his business, the complaint must allege that the words were spoken of him in connection with his business.

**2. SAME—DAMAGES.**
    In an action for slander in one's business, prospective profits are speculative, and cannot be considered.

**3. SAME—PUNITIVE DAMAGES.**
    In an action for unprivileged slander, plaintiff need not prove the words spoken were false to authorize the recovery of smart money.

**4. SAME—EVIDENCE.**
    In slander it is unnecessary for plaintiff to prove the words alleged to have been spoken to be false.

**5. SAME—BURDEN OF PROOF.**
    Where the truth of words alleged to be slanderous is pleaded as a defense, the burden is on defendant to prove them true.

**6. SAME.**
    Where the words alleged to be slanderous are privileged, the burden is on plaintiff to prove them false, and that defendant knew they were false.

Action by Thomas J. Hume against Julius Kusche for slander. Motion for plaintiff for a new trial. Denied.

The alleged words and innuendoes are as follows:

"You (meaning the plaintiff) are dishonest. I (meaning the defendant) came for money and I don't care whether I injure you in your business or not; you are dishonest, you did Hofmeiser out of $200 which you owed him. dishonestly (meaning thereby that plaintiff had defrauded said Hofmeiser)."

The complaint alleges that the plaintiff was in business as a tailor, and that these words were spoken to him in his shop.

F. W. Park, for plaintiff.
M. J. Tierney, for defendant.

GAYNOR, J. 1—The words complained of are not a slander per se. To be a slander per se they would have (1) to charge the plaintiff with a criminal offence, or, failing of that, (2) be spoken of him in respect of his business, and be of such a character that they must necessarily injure him in his business; as that (being a tailor) he was a botch, or that his clothes were misfits, or that he was insolvent, and the like. Odgers (Bigelow's Ed.) c. 2, pt. 2. It is obvious that the words do not come under the first head; nor do they come under the second. They do not touch him in his skill or credit as a tailor. Moreover, there is no allegation in the complaint that the words were spoken of him in the way of his business; and that is essential. Odgers (Bigelow's Ed.) p. 64.

A general libel or slander is one thing; a libel or slander against one only in his trade, business or profession is another. Words which constitute a general libel or slander may be such as to injure one in his business as well as in his general reputation; as that he is a thief or

¶ 4. See Libel and Slander, vol. 32, Cent. Dig. § 280.

convict; and recovery may be had for the injuries in both respects in an action on the words generally. In a case of general libel or slander, "the state, degree, quality, trade or profession" of the plaintiff has to be considered on a general allegation of damage in assessing his damages. Tillotson v. Cheetham, 3 Johns. 64, 3 Am. Dec. 459; Cady v. Brooklyn Union Pub. Co., 23 Misc. Rep. 409, 51 N. Y. Supp. 198. But where the words are libelous or slanderous per se only because written or spoken of one in his business, they must be so complained on.

2—The words here complained of not being slanderous per se, are not actionable at all, unless they did special damage; and the special damage has to be alleged in the complaint in order to make it state a cause of action. In the case of words libelous or slanderous per se, the law presumes that they do general damage to reputation, or to business, or to both, as their purport or gravity may be; but in the case of words not libelous or slanderous per se, the law does not presume that they do any damage, and therefore in order to make them actionable the complaint has to allege special damage caused by them. The damage which a libel or slander per se will be presumed to do to one's business, by causing a general loss of credit or falling off therein, is not special damage, but general damage, and may be proved under a general allegation of damage. Odgers (Bigelow's Ed.) c. 10, p. 293; Smid v. Bernard, 31 Misc. Rep. 35, 63 N. Y. Supp. 278. Dicta are to be found classifying a general falling off of business caused by a libel or slander per se as special damage; but they are inadvertent. Special damage, whether from a libel or slander per se, or from words not of that class, is always and only damage which the law does not presume will follow from the words complained of, and which for that reason has to be specially and particularly pleaded in order to be recovered for. And general damage can never be recovered for words not libelous or slanderous per se, but only special damage. The gist of the action in such a case is special damage. If the words are such that the law will permit a presumption of general damage to reputation or to business therefrom, then they are libelous or slanderous per se. Smid v. Bernard, 31 Misc. Rep. 35, 63 N. Y. Supp. 278; Cruikshank v. Bennett, 30 Misc. Rep. 232, 62 N. Y. Supp. 118; Rade v. Press Pub. Co., 37 Misc. Rep. 254, 75 N. Y. Supp. 298; Langdon v. Shearer, 43 App. Div. 607, 60 N. Y. Supp. 193.

The apparent classification as special damage in the opinion in Bergmann v. Jones, 94 N. Y. 51, of that general damage to business (i. e. general decrease or falling off) which the law will presume in the case of a libel or slander per se, was plainly inadvertent. The loss of a particular customer is special damage, and cannot be proved unless specially pleaded; but a general falling off or decrease in business comes under the head of general damage. The law presumes general damage, but does not presume special damage. Hence, the latter has to be specially pleaded and proved.

The allegation in this complaint which is claimed to be of special damage is that a named person was about to enter into an agreement of partnership with the plaintiff to carry on the tailoring business, "which arrangement would have been greatly to the advantage and benefit of the plaintiff, and large profits would have resulted to him

therefrom," but by the words complained of he was influenced not to do so.

The prospective profits alleged are wholly speculative. They would depend on the skill and energy of the partners; and the plaintiff may do better alone with his skill and energy. No special damage being alleged, the complaint does not state a cause of action.

3—No branch of the law is so beset by a mass of erroneous and confusing dicta as that of libel and slander in civil actions; and these dicta are persistently kept rife by some text-writers, and, as must be owned, by some judges, instead of being ignored. One of them (and it is so modern that it does not seem to have found its way into any text-book yet, and, it is to be hoped, never will) is repeated, and given a status, if that were possible, by the opinion in our Court of Appeals in a very recent case. Crane v. Bennett, 177 N. Y. 106, 69 N. E. 274. The action was for damages for an unprivileged libel per se, and the question of what evidence of malice would permit the jury to give smart money damage being up, the learned judge writing says, after referring to cases:

"The general rule is that in an action for libel, proof by the plaintiff tending to establish the falsity of the alleged libelous publication is evidence of malice, and if such evidence is introduced a question for the jury is presented whether the malice is of such a character as to call for punitive damages."

This is repeated several times by the learned judge, and declared to have been the law for a quarter of a century, viz., since the Samuels Case, 9 Hun, 288, which he cites. Nevertheless, scientific lawyers have always understood, and still understand, that an unprivileged libel per se is in a civil action presumed by the law to be false, instead of the plaintiff being under the necessity of proving it false; and the law has never been otherwise for an instant. Moreover, unless the defendant pleads its truth as a defence, its falsity stands conceded, and cannot be questioned on the trial; and if there be such a defence pleaded, the burden is not on the plaintiff to prove the falsity of the libel, but on the defendant to prove its truth.

As is said in Folkard's Starkie (if, indeed, it be seemly to cite authority to our learned profession for a thing so well known among us):

"The law always presumes in favor of innocence, and therefore does not require the plaintiff to prove the falsity of the alleged calumny; on the contrary, it imposes the burden of proving the affirmative on the defendant; the truth of the supposed slander is, in effect, a ground of justification which must be substantiated by the defendant." Section 9 (4th Eng. Ed.).

And Odgers says (p. 169):

"The falsehood of all defamatory words is presumed in the plaintiff's favor, and he need give no evidence to show they are false; but the defendant can rebut this presumption by giving evidence in support of his plea that the words are true in substance and in fact."

It would be strange enough for counsel for plaintiff to take the affirmative of such an issue when it is raised by the answer; but what would be said of a counsel for plaintiff who should proceed to prove the falsity of the libel when no issue of its truth is raised by the answer

.at all, but, on the contrary, its falsity stands unquestioned? His con-
·duct would be the jest of every educated lawyer present. He would
be tendering and taking the risk of an issue not in the case at all.
If, however, he should succeed on such issue, he would then only be
where he started, i. e., the words would still stand as false, no more
.and no less. Prince v. Brooklyn Eagle, 16 Misc. Rep. 186, 37 N. Y.
Supp. 250; Remsen v. Bryant, 24 Misc. Rep. 238, 52 N. Y. Supp. 515;
Ullrich v. Press Co., 23 Misc. Rep. 168, 50 N. Y. Supp. 788; Cady
·v. Brooklyn Union Pub. Co., 23 Misc. Rep. 409, 51 N. Y. Supp. 198;
·Odgers, cc. 7, 8, 9. If he should fail, his case would be lost by his
own folly. But a counsel who should essay to make such supereroga-
·tory proof would receive to-day, notwithstanding our strange modern
dicta, the same warning hint from the trial judge which Lord Ellen-
·borough in the same circumstances gave to counsel in Brown v.
·Croome, 2 Stark. 298, i. e., that he was inviting the risk of evidence
·from the defendant's side on an issue that did not exist.

And if the defendant should give evidence of the truth under a de-
·fence of the truth, and the plaintiff should meet such evidence by
·contrary evidence, the court could not even then legally charge the
jury that if the plaintiff had proved the defamatory words false, that
was evidence of malice. That would imply to the jury that it was for
the plaintiff to prove the words false; whereas the charge would have
·to be that unless the defendant had proved the words true, they were
to be taken as false, in which case the words might be of such a char-
·acter as to be of themselves evidence to the jury of malice.

Of course the statement that it is for the plaintiff to prove the
falsity of the libel in a civil action (which the law already presumes
in his favor), is a mere borrowed inadvertence of the learned judge
writing, and not a decision of the court; and the learned judge says
in the same opinion (and it is always a happy circumstance that the
antidote accompanies the bane) that it is not everything said by a
judge in his opinion which becomes law, but only that which the court
actually decides upon the facts of the case; that "a judicial opinion,
like evidence, is only binding so far as it is relevant, and when it
wanders from the point at issue it no longer has force as an official
utterance"; and that "what may have been said in an opinion should
be confined to and limited by the facts of the case." The learned trial
judge charged "that the falsity of the libel is sufficient evidence of
malice to uphold exemplary damage," (meaning that it was for the
jury to say whether the false words in themselves furnished to their
minds sufficient evidence of malice, and, if so, leaving to their discre-
tion, as the law does, whether they should give smart money or not),
.and it was an exception to this which the learned judge writing in the
Court of Appeals was discussing, and which that court overruled.
The learned trial judge did not say that it was for the plaintiff to
prove that the libel was false—strange indeed would it be for any trial
judge to so say—and hence no such question was up on appeal. It
follows that what was said thereon was a dictum.

There is a very great difference between charging a jury that the
defamatory words in themselves, or "the falsity of the libel," if some
will have it that way, may be sufficient evidence of malice to support

smart money, and charging that "proof by the plaintiff tending to establish the falsity of the alleged libelous publication," may be sufficient evidence of malice to support smart money; for the latter is pregnant with the error that it is for the plaintiff to prove the words false, and is misleading to the jury.

This dictum of the plaintiff having to prove the falsity of the libel in a civil action in order to prove malice as a foundation for smart money (and that is the only reason for proving or claiming malice at all in the case of a libel or slander not of a qualifiedly privileged occasion), seems to exist nowhere except in this state. It seems to have first arisen in the Samuels Case, 9 Hun, 288, in some loose sentences of a dissenting opinion which was adopted on appeal by the Court of Appeals (75 N. Y. 604), since which time it has been inadvertently copied several times. The learned judge who wrote it there may have had his thumb on the page of some good text-writer; but if he had looked again he would have seen that it was of a chapter which did not relate to ordinary actions for libel or slander, like the one before him, at all, but only to actions for qualifiedly privileged libels and slanders. In such cases the presumption of falsity does not exist; there is no presumption either way. The occasion of qualified privilege does away with the presumption of falsity, and also raises a presumption of good faith in the defendant which continues though the libel or slander be shown to be false; and therefore the plaintiff has to prove that the libel or slander was both false and malicious in order to defeat the privilege and make out a case, the same as the plaintiff in an action for malicious prosecution has to prove lack of probable cause and malice. Having (1) proved it false, he proves malice by showing (2) that the defendant knew it was false. Townshend, § 388; Folkard's Starkie (4th Eng. Ed., by Wood) § 279, p. 251; Id. § 581; Fountain v. Boodle, 3 Q. B. 5; Fowles v. Bowen, 30 N. Y. 26. The words being proved false, evidence that the defendant acted from ill-will, i. e. malice, and not from a good motive, is evidence of his knowledge of such falsity. The defendant never has to plead the truth as a defence in the case of a privileged communication in order to make the truth an issue. Dicta to the contrary are obviously inadvertent. "The mere circumstance of the statement being false will not suffice to show malice unless there is some evidence to show that the defendant knew it to be false." Williams, J., in Harris v. Thompson, 24 Eng. L. & Eq. p. 381. "There was no evidence here that the charges made against the plaintiff were false, and not a scintilla of evidence to show that the defendant knew them to be false." Id. (Talfourd, J.). "Where a communication is privileged, the plaintiff cannot recover without proving affirmatively not only the falsehood of its contents, but also that it was published with express malice. Unless he can prove both of these points he must fail." Edwards v. Chandler, 14 Mich. 471, 90 Am. Dec. 249. "So it has correctly been held that when the defendant's evidence tends to prove that the alleged libel was a privileged communication, the plaintiff cannot break the force of that evidence and establish actual malice by relying on the presumption of falsity; he must prove the defamatory charge to be false and that the defendant knew it was false." Atwater v. Morning News Co., 67 Conn. 519, 34

Atl. 869.  This proof destroys the privilege, for there is no privilege to lie, except in a case of absolute privilege.

To inadvertently cite in the case of unprivileged libels and slanders the law on this head which is applicable to libels and slanders published on a qualifiedly privileged occasion, causes endless confusion.  Some text-writers, by detaching from their context expressions in judicial opinions, and putting them in a context to which they do not apply, have produced books on libel and slander which are worse than worthless.  The discriminating work of Mr. Odgers does not belong to this class.  Odgers, c. 9; Prince v. Brooklyn Eagle, 16 Misc. Rep. 186, 37 N. Y. Supp. 250.

The justification for this digression is that trial judges have been confronted by counsel with this obviously fallacious dictum for a long time in the trial of causes, and they feel that they ought to be rid of it. The learned trial judge who tried the Crane Case kept clear of it, as trial judges generally do; and the important thing is that his charge was affirmed, and that is the full extent of the actual decision of the Court of Appeals.  If the learned trial judge had charged that it was incumbent on the plaintiff to prove that the libel was false in order to prove malice and thereby get smart money, and the verdict had been for only nominal damages, who will say that the judgment would not have had to be reversed?  And yet this is what trial judges would do if they were to accept as law the dictum repeated in the Crane Case.

This matter of smart money is common to all actions for torts against the person, and not peculiar to libel and slander (Taylor v. Church, 8 N. Y. 460); and until the advent of the dicta of some quite modern judicial opinions in this state in libel and slander actions, there never was any trouble about it.  It was formerly just as plain and simple a matter in actions for libel or slander per se as it was and still is in actions of battery, crim. con., false imprisonment and malicious prosecution.  Tillotson v. Cheetham, 3 Johns. 64, 3 Am. Dec. 459.

The motion for a new trial is denied.