## ALLEGED LIBEL IN PUBLICATION OF ARREST ON CHARGE OF PERJURY.

Common Pleas Court of Franklin County.

SAMUEL HEIMLICH v. THE DISPATCH PRINTING COMPANY.

Decided, 1916.

*Libel—Publication of Arrest for Perjury as Result of Investigation—Ultimate Fact as to Privilege is for the Jury—Presumption of Publication Without Malice—Constitutionality of the Statute Relieving Publisher of Criminal Prosecution for Libel—Inaccuracy of Report Constitutes Scintilla of Malice—How Express Malice May be Shown Against a Corporation—Issue as to Truth of Publication Raised, When—When a Case is Pending in the Police Court—Determination as to When Prosecution Was Begun—Publication as to Investigation of Alleged Frauds in the Initiative and Referendum Privilege When Not Done with Malice.*

1. Where defense of privileged publication as being a fair and impartial report of the filing of an affidavit and issuance of a warrant in police court and of pendency of criminal case therein, as well as claim of fair and impartial report of proceedings before state officers, is entered against a cause for libel *per se*, and the facts are disputed touching the existence of express malice, or if the facts relating to the fairness or impartiality of the report be controverted, or if there is some evidence *tending* to show inaccuracy or partiality in the report, then the question of the ultimate fact of privilege is for the jury to determine.

2. When the privileged occasion fact is shown, a presumption arises therefrom that the publication was without malice, which remains with defendant until rebutted by evidence of express malice. The use of the term "maliciously" in the statutes, Sections 11343-1 and 11343-2, relieving the publisher of report of proceedings in court, filing of affidavit, etc., unless it is proved to have been published "maliciously," is held to mean and comprehend "express malice," because the intent and purpose of the amended statutes was to abrogate the old rule which allowed action for simple malice in law. That the statute thus allows redress for actual malice notwithstanding privileged occasion is another reason for holding the statute constitutional.

3. The question of express malice is for the jury, where there is some evidence tending to show it. Inaccuracy of report, or comment

506      FRANKLIN COUNTY COMMON PLEAS.

Heimlich v. Dispatch Prtg. Co.      [Vol. 18 (N.S.)

by publisher may constitute a scintilla of evidence of express malice, although a mere mistake innocently made through excusable inadvertence can not in any case be evidence of malice. While express malice may be shown by hatred or individual spite or malevolence as between individuals, still this can not be so as against a corporation, in which case it must be established by evidence of a wrongful act intentionally done, without just cause or excuse, as where a publication clearly appears to have been made with reckless disregard of another.

4. Though truth be not pled by defendant, still the issue is raised if plaintiff offers evidence as part of his case tending to show the falsity of the charges. Presentation of such issue renders it necessary to submit the case to the jury, it being essential for this question to be first determined, prior to the issue of privilege and malice.

5. The filing of an affidavit and the issuance of a warrant causes the jurisdiction of the police court to at once attach, resulting in the pendency of a criminal case therein, which is in no wise affected by the entry of the words "Affidavit withdrawn July 22, 1913, on a record not official."

In the absence of testimony to the contrary the date of the filing of the affidavit is controlling for all purposes, especially if a publisher claims privilege in reliance thereon in a cause for libel. Where the file marks of the affidavit and the issuance of the warrant date as April 21, 1913, such date is controlling, although the clerk is unable to state what date is correct. The fact that no official record was made of the filing of the affidavit and the issuance of the warrant is immaterial because the record is but the record of the fact.

6. The constitutional provision vesting the supreme executive power of the state in the Governor (Article I, Section 5) clothes the Governor with important political power and police power, vesting such officer with the exclusive discretion and judgment in its exercise, for him to determine and for what purpose and how he shall use such power. Pursuant to such power such officer has the right to make investigation into frauds in the use of the initiative and referendum, and may call to his assistance the Attorney-General, and other assistants, all such acts, information, facts, done and performed in this behalf constituting a "proceeding" within the meaning of Section 11343-1 rendering fair and impartial publication of reports of proceedings before state officers privileged, unless the same be published maliciously.

[Syllabus by the court.]

*Joseph L. Stern* and *C. A. McCleary,* for plaintiff.
*Smith W. Bennett* and *W. R. Pomerene,* contra.

KINKEAD, J.

The action is to recover $100,000 damages for libelous articles published of and concerning plaintiff as follows:

"As the result of the investigation made by W. D. Yaple, at Chillicothe, into the referendum petition filed from that place, a warrant was sworn out Monday evening for the arrest of Samuel Heimlich (meaning plaintiff) an attorney of Cleveland, who circulated petitions there, charging him (meaning the plaintiff) with perjury. The perjury consisted in swearing that the name of B. F. Butler on a petition that he (meaning plaintiff) filed was genuine. It (meaning thereby the name of B. F. Butler to said referendum petition) is declared by Butler to be a forgery" (meaning and intending thereby to mean that the plaintiff either forged the name of the said B. F. Butler or aided and assisted in causing the name of said B. F. Butler to be forged).

"The Attorney-General's office, however, expects to file another warrant against Heimlich (meaning plaintiff), based on other evidence of alleged fraud in connection with the same law.

"McMillan is attorney for Samuel Heimlich (meaning plaintiff) of Cleveland who (meaning plaintiff) is now charged with perjury."

The defense of privileged publication as to the first cause of action under both Sections 11343-1 and 11343-2, General Code, as being impartial reports of proceedings in the police court of the city of Columbus in *State* v. *Heimlich,* in which an affidavit for perjury was filed and warrant issued, as also an impartial report of proceedings before the Governor and Attorney-General in the matter of the investigation into initiative and referendum petition frauds and irregularities.

The evidence disclosed that the Governor instituted the investigation, calling upon other officials and other persons to aid therein, using a special contingent fund allowed the Governor for use by him for just such an emergency.

508     FRANKLIN COUNTY COMMON PLEAS.

Heimlich v. Dispatch Prtg. Co.     [Vol. 18 (N.S.)

The plaintiff was engaged in circulating petitions and information came to the Governor of alleged irregularities. on his part in obtaining signatures. He was ordered to be arrested on a charge of perjury by the Governor. The first affidavit was filed July 21, 1913, and warrant was issued, but no arrest was made. On July 22, 1913, on a warrant book, an unofficial record, a memorandum was made "warrant withdrawn." Another warrant on another charge was filed against plaintiff in the morning of July 22. The publication of the article in the first cause of action was made on July 22, the first issue of the paper being 10:15 and other later ones on the same day.

At the close of all the evidence counsel for defendant moved the court to arrest the case from the jury and direct a verdict in its favor.

The contention of the defendant is that the facts and circumstances under which the publications were made are not in dispute and that they are of such character that there can be no reasonable doubt in the mind of any one that the report was fair and impartial, and that there was no express malice. Therefore, the privilege must prevail and a verdict in favor of the defendant be directed.

Counsel for the plaintiff, on the other hand, insists that the facts relating to the privilege are in dispute. They contend also that the evidence introduced tends to show express malice. If either of these claims asserted by plaintiff is true, then of course the case must go to the jury.

The first question to be considered is the one of privileged occasion.

It is sufficient to merely state that the statute makes privilege a fair and impartial report of "the issuing of any warrant" or "the filing of any affidavit" in any criminal case, as well as a fair and impartial report of the contents thereof. The statute also makes privileged the publication of a fair and impartial report of the proceedings before state officers (Sections 11343-1, 11343-2). Such publications are made privileged unless they are proved to have been "made maliciously." The word "maliciously," as it is used in that statute, must be held

.to mean and comprehend ''express malice'' because the intent of the statute was to abrogate the old rule which gave a cause ·of action for simple malice in law.

. It must be concluded that the statute intended to mean that the privilege was to be available to a defendant unless actual or express malice be shown, for the reason that the amended :statutes were passed to destroy or take away the right of action where only presumptive malice appeared, or malice in law was present.

The claim is made by defendant that the so-called investigations lately made by the Governor, the Attorney-General and the Secretary of State concerning frauds committed in the use of the initiative and referendum petitions are within the purport and meaning of the statute. The right and authority of the Secretary of State when acting as state supervisor of elections to hear and determine the sufficiency and validity of all provisions filed with him under the provisions of Article II, Section 1c of the Constitution, has been recognized and established by decision of the Supreme Court, *State* v. *Graves,* 90 Ohio St., 311.

This being true, it remains for this court to determine whether whatever part the Governor or the Attorney-General— 'either one or both of them—took in the matter of investigating 'into the existence of such frauds and the misuse of the initiative and referendum, comes within the meaning of the proceedings such as are contemplated by Section 11343-1, General Code, prescribing the privilege of the publication of reports of things done by such officer or officers. We are not to be captious or 'technical concerning the purpose and meaning of the terms ''proceedings,'' especially as we must not look upon that term alone in the light in which we are accustomed to regard ''proceedings'' with reference to courts of justice. It must have reference to such act or acts as the Constitution or statute authorizes state officers to do and perform in the line of their duty prescribed by law. The Constitution provides that ''the supreme executive power of this state shall be vested in the Governor.'' Article III, Section 5.

510     FRANKLIN COUNTY COMMON PLEAS.

Heimlich v. Dispatch Prtg. Co.     [Vol. 18 (N.S.)

It has been held that this provision clothes the Governor with important political powers in the exercise of which he uses his own judgment or discretion, and in regard to which his determinations are conclusive. *State* v. *Chase*, 5 Ohio St., 528, 535.

The supreme police power of the state which, as is well understood, is not circumscribed or limited by any statute, the same being vested within the exclusive discretion and judgment of the Governor. It is wholly and entirely within his uncontrolled discretion for him to determine when and under what circumstances and for what purpose and how he shall use its power.

The evidence introduced discloses that certain abuses and alleged frauds were practiced by persons connected with the use of the new provision of the Constitution, the initiative and referendum. The evidence discloses that knowledge had come to the Governor that the provisions of the Constitution, in his judgment, were being misused and had been frequently violated, thus distorting the purpose of the new instrument and the new method of law making, so that the rights of the government were being violated, if such frauds were committed. In this emergency the Governor commenced an investigation, calling to his aid the Attorney-General, who is his legal adviser and who in fact in such a matter is subject to his direction. He also called to his aid certain other persons to investigate and discover any possible irregularities in the petitions for a referendum on the workmen's compensation law. It is made clearly to appear that the purpose of the Governor in making such investigations was that if irregularities and frauds were discovered he intended to set in motion any criminal laws that would lead to the punishment of those involved. It also was his purpose, if any such irregularities were discovered, to have the matter investigated by an officer of the law to whom especially is delegated the power over the election machinery of the state.

It must therefore be concluded that any and all acts done and performed by the Governor and by the Attorney-General

and by those called into service by either one or both of such officers, are to be considered as within the contemplation of the statute and a proceeding for the investigation into irregularities and frauds in the use of the initiative and referendum in the procurement and filing of petitions thereunder. It follows therefore that the publication of a fair and impartial report of the acts done pursuant to such investigation by such officers or by their assistants or others acting under their direction, shall be privileged, unless it shall be proved that the publication complained of was made maliciously, or that it was published with express malice as that term must be defined.

The claim is made by the defendant that the publication set forth in the first cause of action is privileged as being both a fair and impartial report of proceedings in the police court of Columbus, as well as of proceedings then being had before the Governor, the Secretary of State and the Attorney-General.

The publication antedated the proceedings begun before the Secretary of State, so that whatever privilege may be claimed by the defendant must come within the statute which may make privileged any proceeding had before the Governor or the Attorney-General. So far as that cause of action is concerned then, the Secretary of State's investigation or the proceeding that was thereafter instituted is not to be considered.

Having set forth the law as to the privileged occasion, we come to a consideration of the facts.

Now as to the first cause of action and as to the claim of privilege on account of its being a report of a proceeding in the police court, the facts are undisputed that an affidavit was filed in the police court on July 21, 1913. It is undisputed also that a warrant was issued by the clerk of the police court on that day.

Counsel for plaintiff deny that the facts with reference to this were undisputed. Counsel dispute the facts. It seems that the clerk had become confused in some previous deposition as to whether the date was July 21 or July 22 that the affidavit was filed. But it is sufficient to state that on trial he did not give any testimony that July 21 was not the correct date. The

so-called warrant book (not an official book) shows "an" affidavit to have been filed at 8:20 A. M. July 22, 1913.

The clerk, however, in this case does not undertake to state that July 21 is not the correct date. The presumption must be that the filing date on the affidavit is correct in the absence of evidence to the contrary, and there is none. A record, not official, will not dispute the filing date which is the original. At any rate, even if there is ground for dispute, it is immaterial because the affidavit was on file prior to the publication of the article.

I do not care what the contention is, my judgment is that prior to this publication there was an affidavit filed and a warrant issued, and that fact is established beyond dispute. There must be sufficient evidence shown to warrant a court in disregarding the actual date of filing appearing upon documents, and my judgment is that whether you consider the date as the twenty-first, or the date as the twenty-second, there was a case pending in the police court of the city of Columbus, Ohio, entitled the *State of Ohio* v. *Samuel Heimlich,* prior to the time of the publication complained of on the twenty-second.

It has been held by the courts of this state that when an affidavit is filed and a warrant issued in the police court of a city, the jurisdiction of that court at once attaches. That case was pending at the time of this publication and it is still pending. The evidence fails to disclose that it ever had been dismissed. The memorandum which is made on the so-called warrant book that the affidavit had been withdrawn is wholly ineffective for any purpose whatsoever. The only way that case could or can be discontinued is by some order made by the court, and there is no evidence of any such order.

That would be like the case of *King* v. *Penn,* where the pleading was lost in a drawer and remained there for some time. Yet it was considered as filed, as of the date when lodged with the clerk. The matter of the filing of a case is an act and not a record. The memorandum in the record is, of course, evidence of the act. That is the rule that was adopted in *King* v. *Penn,* so that whatever view counsel may take of the matter,

my conclusion is that there was a pending case at the time of this publication and the' case that is involved in the first cause of action was one that was then pending, because the date on the affidavit is the only official act shown in evidence, and it is not contradicted.

Now the state extends the privilege both to the pendency of a case and to the filing of an affidavit, and to the issuance of a warrant, but as I have stated, the courts have held that the filing of an affidavit and the issuance of a warrant is what gives jurisdiction and what makes a case pending.

I will analyze this article for a moment to show what I have in mind. The publication states that as the result of the investigation made by D. W. Yaple, at Chillicothe, into a referendum petition filed from that place, a warrant was sworn out Monday evening for the arrest of Samuel Heimlich, an attorney of Cleveland, who circulated petitions there, charging him with perjury. Now to that extent I think every one will admit that that on its face purports to be a report of a case pending in the police court. The next paragraph is to the effect that the perjury consisted of swearing that the name of B. F. Butler on the petition that he filed was genuine. Then it says: "It is declared by Butler to be a forgery." In other words, the publication undertakes to state what Butler claims with reference to the appearance of his name on the petition, which is to the effect that Butler declares it to be a forgery. There is some question that may be raised with reference to whether that is within the meaning of the statutes as a fair and impartial report of the filing of an affidavit and the issuance of the warrant, or whether it is an "addition." It might be a report of a fact obtained from the Governor's or Attorney-General's office. This seems the more likely. But this is for the jury.

The statement "The perjury consisted of swearing that the name of B. F. Butler on a petition that he filed was genuine," of course, may reasonably be considered as being a report of the contents of the affidavit, but when you come to the expression "It is declared by Butler to be a forgery," we have a different question. On reading the affidavit you will find that the allega-

tion is made that this plaintiff made an affidavit that the names of all persons on that petition were their genuine signatures, and then it made the statement that the name of B. F.—of course meaning Hunter—that B. F. Butler's name was not a genuine signature. Now a true and strict report would have given more nearly an exact account of what the affidavit stated, but when you say that it is declared by Butler to be a forgery, that on its face might bear the inference or warrant the claim that it was undertaking to say something that Butler had said somewhere or at some other place, and that, coupled with the mistake in the use of the name—suing B. F. Butler instead of giving the true name, is regarded by the court as some evidence that in my judgment warrants the submission of that question to the jury. There is in fact an apparent mistake in stating the name of the person whose name was obtained on the referendum petition. It was B. F. Hunter, senior, and not B. F. Butler. Butler was the name of the notary before whom the affidavit was taken. This might be claimed to be an immaterial mistake, or one not materially affecting the substance of the charge of perjury or forgery. No explanation of it is made in the evidence. It could have occurred by confusing the name of the notary whose name was signed to the affidavit to a referendum petition. It is considered that a mere mistake innocently made through excusable inadvertance can not in any case be evidence of malice. Newell, L. & S., Section 398. The materiality of the error will be submitted to the jury.

Whether it shall be concluded in this case that this apparent error should be evidence of express malice is deemed to be more appropriately submitted to the jury for its decision. (Newell, p. 398 and case cited.) Now the privilege claimed in this case, as stated before, is both a report of the proceedings before the Governor and Attorney-General as well as this affidavit and warrant in police court. It might be claimed with reason that the author of this article might have obtained from other sources what Butler or Hunter claimed. Express malice, in a case against a corporation, may be shown by gross carelessness or by acts in utter disregard of the rights of another, a

wrongful act intentionally done, and my judgment is that on that one point alone this first cause of action should go to the jury.

If the facts are in dispute touching the existence of express malice, or if the facts relating to the fairness or impartiality of the report be controverted, the ultimate facts of privilege is for the jury to determine, or if there is some evidence tending to show inaccurary or partiality, then the question may appropriately be submitted to the jury.

It must be kept in mind too that the mere falsity of the libel is not alone sufficient evidence to show express malice, or to destroy the privilege. It is essential to show knowledge of the falsity of the libel on the part of the defendant in order to show express malice. *Laing* v. *Nelson,* 40 Neb., 252; *Ashcraft* v. *Hammond,* 197 N. Y., 488; *Hume* v. *Kusche,* 42 Misc., 414; *Atwater* v. *News Co.,* 67 Conn., 504, 519; *Edwards* v. *Chandler,* 14 Mich., 471; Newell L. & S., p. 398, notes 32 and 33.

Express malice may be actual hatred or individual spite or malevolence as between individuals, but in such case as this, express malice must be shown, not like that between individuals, but it may be shown by evidence of a wrongful act intentionally done, without cause or excuse, as where a publication clearly appears to have been made with reckless disregard to the rights of another or where there has been gross carelessness. A proper conception of malice is that it has reference not to intention, but to motive, and in almost all legal inquiries intention as distinguished from motive is the important matter.

In making a fair and impartial report of a privileged proceeding, the rule is that the publisher himself must add nothing of his own (Newell, Section 663). The statement "It is declared by Butler to be a forgery" might be an inference drawn from the affidavit which charged that one of the signatures on the referendum petition to which the alleged fake affidavit was attached, purported to be the name of one B. F. Hunter, senior (Butler), and purported to have been signed thereto on June 9, 1913, whereas in truth and in fact the signature so attached to the petition was not the genuine signature of the said B. F.

516 FRANKLIN COUNTY COMMON PLEAS.

Heimlich v. Dispatch Prtg. Co. [Vol. 18 (N.S.)

Hunter, nor did the said B. F. Hunter, senior (Butler), sign the petition. If the statement that Butler (Hunter) declared the signature to be a forgery be considered as part of the report on the affidavit, opinion might differ concerning whether the inference was proper and justifiable. If it be considered unjustifiable, then consideration should be given this paragraph as being part of a report 'of proceedings before the Governor or Attorney-General and whether information was obtained by the reporter from either one of these sources to the fact that Hunter (Butler) was claiming that he did not sign his name to the petition. Mr. Galbraith testified that he secured his information from those offices. His recollections are not clear and distinct concerning the portion of the article, nor as to the sources of the information. It might have been possible that Mr. Galbraith obtained all his information from either the Attorney-General's office or the Governor's office, by either seeing the affidavit there or a copy of it, or from statements made by officials in those offices claiming to have knowledge of the facts. But it is an undisputed fact that an affidavit had then been filed in police court.

Now counsel on behalf of the defendant have strongly urged that there is no evidence of express malice, and as long as the privileged occasion exists and if the court holds as matter of law and the fact that there was and is a privilege, then there is no malice shown. It is a hard problem to decide. I have carefully considered the evidence, and I have given heed to the arguments of counsel for plaintiff in the contentions that are made with reference to these articles. One point is made that the association of Heimlich in the article of the twenty-second with other frauds on initiative and referendum petitions, is to be regarded as evidence of some malice. That is the one this cause of action is drawn from. My judgment is that the article does not bear out the contention of counsel for plaintiff. Of course the general subject of referendum petitions on any laws, or the two or three propositions that were before the people, might be considered as one subject-matter for a newspaper to incorporate into one article, and still the head line here ''Hunt evidence of

fraud in libel law petitions'' is to be taken into consideration
with the article itself, and if you will read that part of it which
relates to "libel law petitions" I do not think by any stretch
of the mind you can link that with the article that is below.
But the question of malice will be submitted to the jury.

My judgment is that the article itself does not disclose on
its face any knowledge on the part of the defendant of any con-
nection with Heimlich. In making a fair and impartial report
of a privileged proceeding, the rule is that the publisher must
add nothing of his own. I make that statement because it is
relevant to this first cause of action, and the court will charge
the jury with reference to that matter.

There is another reason that prompts the court to overrule
this motion. The state of the evidence is such that the court
deems it proper, safe and wise to submit the question of
fact as to whether or not the publication was a privileged one
within the law, which the court will lay down, to the jury. It
seems to me that under all the circumstances, it is more within
the province of the jury to find where this information came
from, who obtained it and how it was obtained and with what
care it was obtained. The question of the function of the court
and jury thus presented, is a delicate and important one. There
is no duty of the court in the matter of construing the meaning
of the libelous article because the question whether the affidavit
fully justified the statement that Butler claimed the signature
to be a forgery is not within the pale of construction. And
the article needs no construction by the court because the
charge of perjury and of forgery stand out clear and distinct.
It is considered that it is for the jury to decide from what
sources the defendant obtained the information for this article,
whether from the Attorney-General's office, or the Governor's
office, or from the police court. The nature of the evidence
concerning this matter, together with the one paragraph as
to the statement as to the claim of Butler and the mistake
in the name altogether considered, seem sufficient reason why
the question should go to the jury. The function of the court
in such case then is to give the law as to the occasion of the

518    FRANKLIN COUNTY COMMON PLEAS.

Heimlich v. Dispatch Prtg. Co.    [Vol. 18 (N.S.)

privilege, and that of the jury to determine whether the facts bring the case within the occasion. A presumption in favor of the defendant arises from the privileged occasion which remains until it is rebutted by evidence of malice. Only so much of the article as is contained in the issue of the paper in which the portion complained of in the first cause of action as relates to the referendum on the workmen's compensation law, can be considered, because there is no evidence that shows that defendants had any connection with the newspaper bill. The plaintiff can not recover, therefore, unless the evidence offered shows express malice, and the obligation rests upon the plaintiff to prove such malice. What evidence is there then to show express malice? As to the first cause of action, there is nothing unless it be the statement in the publication that it is declared by Butler that this signature to the petition is a forgery. There is no evidence that Butler or Hunter made such claim, nor is there any evidence specifically showing that this fact was one obtained from those officers making the investigation. Galbraith's testimony is not clear on that point. Whether this shows the report to be fair and impartial seems more within the function of the jury to decide, especially in view of the mistake in the use of the name Butler instead of Hunter. Whether there was such gross carelessness, either in obtaining the facts or in correctly reporting the same as tends to show express malice on the part of the defendant so as to make the defendant liable, notwithstanding the privileged occasion, is deemed by the court more appropriately a question for the jury. Furthermore, in view of the evidence relating to obtaining the facts stated in the article, it is considered by the court a safer course to submit the ultimate facts of who and how the information was obtained, whether from sources which rendered the report privileged, as well as the decision whether it was fair and impartial. Therefore, as I say, the motion as to the first cause of action is overruled.

Now with reference to the second cause of action, that is a publication in connection with the statement of the alleged withdrawal of the former affidavit and is, "The Attorney-Gen-

eral's office, however, expects to file another warrant against Heimlich based upon other evidence of alleged fraud in connection with the same law.'' The privilege claimed for that cause of action is that it is a fair and impartial report of proceedings that were had before the Attorney-General and the Governor. I have gone over the evidence bearing upon the source of knowledge of the alleged facts and the evidence touching the preparation of that article, and my judgment is that the evidence bearing upon that is of such character that it is prudent and wise for the court to submit it to the judgment of the jury. This publication by *innuendo* charges Heimlich with the commission of fraud, and being an attorney, in the absence of truth or privilege, is libelous *per se*. The evidence discloses that this information came from reports of proceedings before state officers. There is another proposition, however, that stands out paramount in my mind. The plaintiff, by the course of his evidence, has made the falsity and truth of the charge of fraud contained in that publication an issue. The court might possibly be warranted in taking the view that the evidence now offered, in so far as concerns the admissions of the plaintiff, shows that he was directly and proximately the cause of whatever fraud there was committed in the filing of the petition containing the name of Harry Walker. I have read his testimony and it is evasive, unsatisfactory and calls for judgment upon its. credibility, which is not the function of the court. Whatever opinion the court might have about it, would matter not. It seems clear to my mind, however, that his admission that he had left this petition signed by him for the purpose which he states—as to identifying the petitions gotten by him—with those authorized to receive them, would render him liable for whatever consequences resulted therefrom. By his own act he made is possible to have the paper writing signed up and filed and he should be held responsible therefor. But to my mind, it would not be the cautious and safe method for the court to undertake to assume any duty with reference to that matter under all the circumstances. The issue is clearly and sharply drawn as to whether or not the

520    FRANKLIN COUNTY COMMON PLEAS.

Heimlich v. Dispatch Prtg. Co.    [Vol. 18 (N.S.)

plaintiff did commit a fraud. He has given his version of the matter with reference to swearing to the affidavit. The notary has stated in a pretty clear way that he felt sure there were only three affidavits to which he had not formally administered the oath and that Heimlich's was not one of those three. The whole testimony of the plaintiff with reference to that matter as well as with reference to the matter of making demands upon Mr. Butler, show his motive, and which in my judgment is relevant as bearing upon the question of credibility—makes it especially a case that ought to go to the jury.

As to the last cause of action. "McMillan is attorney for Heimlich, of Cleveland, who is now charged with perjury." There could be no possible claim in my judgment that that is not a fair and impartial report of a fact, that Heimlich was at that time charged with perjury. The second affidavit was on file. The court would have to say that it was an absolute privileged publication under all the circumstances, and the only way that the plaintiff could counteract that would be to show express malice with reference to that publication, and in my judgment there is not a shadow of evidence that would bear upon express malice or tend to show express malice as to the publication. The one newspaper article that was introduced about the announcement of Samuel Heimlich from Cleveland that he was going to bring certain prosecutions, in my mind does not tend in the slightest degree to show any malice.

Therefore, the conclusion of the court is that the motion of the defendant as to the first and second causes of action is overruled, and as to the third cause of action it is sustained.