### Savoy Laundry and Linen Supply, Inc. v. Morgan Linen Service, Inc.

Superior Court      Fairfield County      File No. 78089

Memorandum filed December 31, 1949

*Wilder & Shannon,* of Bridgeport, for the Plaintiff.

*Pullman & Comley,* of Bridgeport, for the Defendant.

O'SULLIVAN, J.  The defendant corporation, which shall be called Morgan, has for many years been engaged in the linen-service business in Bridgeport and its environs.  The plaintiff, to be called Savoy, entered the field long after Morgan had become successfully entrenched therein, and by energetic but thoroughly legitimate solicitation acquired a substantial clientele, approximately 75 per cent of which, when procured, was being serviced by Morgan.  From 1945 to 1947, the latter endeavored to purchase from Savoy the business it had built up.  When this proved to be unsuccessful, it engaged in various practices which Savoy seeks in this litigation to enjoin on the theory that they constitute an actionable tort.

The first practice—if practice it may be called in view of there being but a single instance when it was employed—was an interference with a contractual right arising from a written contract previously entered into by Savoy and one Toman.  Although knowing of the existence of the contract, Morgan, acting without justification, persuaded Toman to breach it by refusing to continue further as a Savoy customer.  This was not an instance where Morgan was acting under an equal or superior right.  It was an instance of a wrongful and intentional interference with a right enjoyed by Savoy.

The situation thus presented is such as to make applicable the principle of law apparently originating in *Lumley* v. *Gye,* 2 E. & B. 216, which has had the approval of our own court.  "The intentional procurement of the breach of an existent contract, if done with knowledge of the contract and without just cause or excuse, makes him who causes the breach liable for resulting damage. . . ."  *R & W Hat Shop, Inc.* v. *Sculley,* 98 Conn. 1, 14.  The principle is pertinent here.  Morgan procured the breach of a contract; it knew of its existence; it had no just cause or excuse for its conduct; and its action was intentional.  It follows that Morgan is liable for resulting damage.  However, no special damage has been established.  Consequently, the nominal sum of $5 must be held to represent the damage suffered.  Whether this nominal award, under the facts upon which it is assessed, should carry with it the imposition of exemplary damages requires no decision inasmuch as no claim has been made therefor in the complaint or argument.

The second practice was to deprecate the business integrity of Savoy by suggesting to some of the latter's customers that it was unreliable and untrustworthy. What Morgan did in this respect was also actionable, but here again no special damage has been established. As this phase of the case is not based on the law of slander, I am obliged to limit the damage to a nominal sum and accordingly assess the damage at $5.

The third practice followed this pattern: Morgan approached various customers of Savoy and, as an inducement to lure them away from Savoy, offered to provide free service for varying periods of time. In one such instance, this proffered gratuity would have saved the Howard Johnson Restaurant substantially $750.

The fourth practice was similar to the third but cash was offered instead of free service. From both of these methods, Morgan obtained a relatively small number of Savoy's customers.

No claim is advanced that our Unfair Sales Practices Act is applicable. General Statutes §§ 6715-6717. Nor can one successfully be made, for this act pertains only to those selling at retail "any item of merchandise." § 6716; *Carroll* v. *Schwartz*, 127 Conn. 126, 128. Servicing patrons with linen is not the sale of merchandise. *Rohlf* v. *Kasemeier*, 140 Iowa 182.

The plaintiff does, however, rely on the provisions of § 8601 of the General Statutes. Nevertheless, there are no proven facts which might bring its operation into play and this claim may be ignored. If the plaintiff is entitled to relief, then, against the third and fourth practices, it is not because of any statute to which my attention has been called but rather through the application of common-law principles dealing with what is customarily referred to as unfair competition.

Competition is of two kinds, fair and unfair, and unfair competition, in turn, is capable of being divided into the ethically unfair and the legally unfair. Courts will concern themselves only with the latter. *Lapointe Machine Tool Co.* v. *Lapointe Co.*, 115 Me. 472, 477.

In essence, the two practices under discussion were price cutting, whether they were the giving of cash or the providing of limited gratuitous service. Though either or both of these practices might result in driving Savoy out of business, this is

not sufficient, in and of itself, to brand them as illegal. *Deon* v. *Kirby Lumber Co.*, 162 La. 671, 679; *West Virginia Transportation Co.* v. *Standard Oil Co.*, 50 W. Va. 611; *Dunshee* v. *Standard Oil Co.*, 152 Iowa 618; see note, 15 Miss. L. J. 213. The philosophy behind this concept of law is that free competition is, in effect, an economic war in which almost any means may be used to capture customers from a rival. One notable exception to the foregoing is the use of fraud or deceit. Another is the indulging in activities which are dominantly and primarily aimed at the destruction of a competitor's business.

In *Tuttle* v. *Buck*, 107 Minn 145, the court held that a complaint states a good cause of action which alleges that a banker, who was a man of wealth and high standing, had maliciously established a barbershop, employed a barber to operate it, and used his personal influence to attract customers from the plaintiff's barbershop, not for the purpose of serving any legitimate purpose of his own but solely to injure the plaintiff, an objective which was actually achieved. "But when a man starts an opposition place of business, not for the sake of profit to himself, . . . but . . . for the sole purpose of driving his competitor out of business, and with the intention of himself retiring upon the accomplishment of his malevolent purpose, he is guilty of a wanton wrong and an actionable tort. To call such conduct competition is a perversion of terms. It is simply the application of force without legal justification which in its moral quality may be no better than highway robbery." *Id.*, 151.

In *Dunshee* v. *Standard Oil Co.*, 152 Iowa 618, the plaintiff was a retailer of oil, purchasing his supply originally from the defendant, a wholesaler, but subsequently buying it in part from another. Thereupon, the defendant under the pretense of competition, entered upon the retail field in which the plaintiff operated and employed various means of such a nature as to indicate a malicious intent to injure or destroy the plaintiff's business. To the defendant's claim of immunity under the rules protecting competition, the court answered (p.623) that "It is doubtless true that under many circumstances an act is legally right and defensible without regard to the motive which induces or characterizes it; but there is abundant authority for saying that this is by no means the universal rule, and that an act which is legally right when done without malice may become legally wrong when done maliciously, wantonly or without reasonable cause."

In *Memphis Steam Laundry-Cleaners, Inc.* v. *Lindsey,* 192 Miss. 224, a case involving price cutting and other aggressive acts to destroy a competitor's business, the court, after pointing out that reduction of prices was the absolute right of the owner of the business, went on to say, quoting 30 Am. Jur. 89, § 39, that under the guise of exercising that right it was not lawful to interfere with the business of another party where the exercise of the right was "with the object of injuring the latter rather than primarily of benefiting the person exercising such right."

The law, then, appears to be this: Price cutting, in the absence of statute, is lawful though carried to the extent of ruining a rival, unless the dominant purpose is to injure the rival. If the latter be established, an actionable wrong has been committed.

The dominant purpose in Morgan's contemplation was to obtain customers it had lost. That an incidental purpose was to injure Savoy even to the extent of driving it out of business—as is supported by evidence of a threat to do that very thing—becomes immaterial. *Katz* v. *Kapper,* 7 Cal. App. 2d 1, 4. A good case involving the above principle is *Beardsley* v. *Kilmer,* 236 N. Y. 80. A lawful act, such as price cutting, becomes unlawful only when it is "a malicious one unmixed with any other and exclusively directed to injury and damage of another." *Id.,* 90.

I rebel considerably against reaching the conclusions which the law requires of me in this case. The conduct of Morgan has constantly struck and still strikes me as highly reprehensible. This impression, however, is based on ethical considerations. Unfortunately, as indicated above, courts apply the law and not a code of ethics.

The plaintiff has no right violated by the third and fourth practices. On the other phases of its cause of action, judgment may enter for $10.