[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE' MOTION TO STRIKE
CT Page 3132-cx
This is an action resulting from former employment relationships between the plaintiff, Typehouse, Inc., (hereafter Typehouse), and the individually named defendants, Kevin Corbett, Donald Prohaski, and Teresa Ciarleglio. On March 22, 2000, the plaintiff Typehouse filed a nine count complaint[1] against the defendants, after they quit their positions and pursued employment in direct competition with the plaintiff's business.
I. Factual Background
Consideration of the motion to strike presupposes that the following factual background, gleaned from the complaint, must be presumed to be true. Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989). Plaintiff Typehouse is a commercial printing business, specializing in prepress services. In June of 1999, the plaintiff hired defendant Kevin Corbett as a member of its sales force. Defendant Kevin Corbett signed a comprehensive employment contract with the plaintiff which contained a provision prohibiting his competing with the plaintiff's business. Plaintiff Typehouse shared confidential customer lists and information with defendant Corbett while he was in its employ. On February 28, 2000, defendant Kevin Corbett resigned to pursue own competing printing business. Defendant Kevin Corbett solicited clients of the plaintiff Typehouse the day after leaving their employ.
On or about June 1, 1999 defendant Donald Prohaski began his employment as an internal print buyer for the plaintiff Typehouse. Unlike defendant Kevin Corbett, defendant Donald Prohaski did not sign an employment contract with the plaintiff Defendant Donald Prohaski had worked in the print brokering business in the past and had knowledge of the industry prior to commencing employment with the plaintiff Typehouse. Defendant Donald Prohaski pursued employment with Typehouse due to the fact that his customer base was depleted, and he desired to work for a company with an existing client base.
On or about February 2, 2000, defendant Teresa Ciarleglio was hired by plaintiff Typehouse for the position of printing assistant. Said defendant was hired upon the recommendation of defendant Donald Prohaski. Defendant Ciarleglio, like defendant Prohaski, never signed an employment contract with the plaintiff Typehouse. Plaintiff Typehouse shared confidential customer information with defendants Donald Prohaski and Teresa Ciarlegio during their employment. CT Page 3132-cy
On or about February 25, 2000, defendant Donald Prohaski left the employment of plaintiff Typehouse. Said defendant acknowledged the ownership and proprietary nature of the plaintiff Typehouse's client list upon his resignation. Defendant Teresa Ciarleglio, on or about March 10, 2000, quit her position at Typehouse, Inc. The defendants Donald Prohaski and Teresa Ciarlegio collectively began a printing business, which competes directly with the plaintiff Typehouse.
II. Relevant Counts of Complaint
On October 30, 2000, defendants Kevin Corbett, Donald Prohaski, and Teresa Ciarleglio filed a motion to strike counts IV through IX of the plaintiff's complaint. Plaintiff Typehouse has responded to the motion to strike by stating that it intends to revise counts IV, V, VII, and IX. For that reason the court will not address those counts. The plaintiff opposes the motion to strike in regards to remaining counts VI and VIIII. Each shall be addressed in turn.
A motion to strike admits all facts well pleaded and those facts necessarily implied from the allegations, but does not admit legal conclusions or opinions stated in the complaint. Id. The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted.Novametrix v. BOC Group, Inc., 224 Conn. 210, 214-15, 618 A.2d 25
(1992). If the court can construe the facts in the complaint to support a cause of action, the motion to strike must be denied. Waters v. Autori,236 Conn. 820, 826 (1996).
A. Count VI: Unfair Competition
The court now shall address count VI of the plaintiff Typehouse's complaint, which alleges unfair competition by use of confidential information. Plaintiff Typehouse asserts that during their employment, the defendants acquired the plaintiff's confidential customer list and confidential business information. The plaintiff further alleges that after leaving its employment the defendants utilized the information to their personal benefit and to the detriment of the plaintiff. The plaintiff also alleges that the actions of the defendants were unethical, and immoral, and constituted unfair competition.
In their memorandum in support of the motion to strike this count the defendants argue that the complaint fails to state a valid claim under the Connecticut Unfair Trade and Practices Act, hereafter CUTPA. In its CT Page 3132-cz memorandum in opposition to the motion, the plaintiff states that the claim in count VI is not a CUTPA claim, but rather a claim of common law. The court agrees with the plaintiff's position.
The common law action of unfair competition is a general tort covering many activities that may be harmful to commercial interests. "Competition is of two kinds. Fair and unfair, and unfair competition, in turn, is capable of being divided into the ethically unfair and the legally unfair. Courts will concern themselves only with the latter." SavoyLaundry and Linen Supply v. Morgan Linen Service, Inc., 16 Conn. Sup. 408,410 (1949). "The philosophy behind this concept of law is that free competition is, in effect, an economic war in which almost any means may be used to capture customers from a rival. One notable exception to the foregoing is the use of fraud or deceit. Another is the indulging in activities which are dominantly and primarily aimed at the destruction of a competitors business" Id, at 411. "It is a principle of common law that one who causes loss of business or occupation to another merely by engaging in a business or occupation in good faith is not liable to the other for the loss so caused, though he knows that the loss will result. It is only unfair competition that is prohibited." Connecticut StateMedical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 302,524 A.2d 636 (1987).
In Holiday Food Co. v. Munroe, 37 Conn. Sup. 546, 550, 426 A.2d 814
(1981), the Connecticut Appellate Court stated that
 [a]n agent has no duty to abstain from competition with his principal after termination of the agency, but he has a duty not to use on his own account, in competition with the principal or to the latter's injury, trade secrets revealed to him in confidence or surreptitiously discovered by the agent. After the termination of an employee's agency, in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he was employed, although he cannot properly use confidential information peculiar to his employer's business acquired while he was an agent.
Plaintiff Typehouse has sufficiently pled that the defendants acquired confidential information regarding the plaintiff's business and client list while under its employment. It is further sufficiently pled that the defendants used, to their personal benefit and in competition with the plaintiff, the confidential information acquired to the detriment of the CT Page 3132-da plaintiff. Construing these facts in the light most favorable to the pleader, the court declines to grant the motion to strike for the reason that the allegations support a cause of action for unfair competition.
B. Count VIII: Breach of Implied Covenant to Protect Confidential Information
In as much as the plaintiff has filed no substantive legal authority in its memorandum in opposition to the motion to strike, the court considers the plaintiff to have abandoned said count.
III. Conclusion
For the foregoing reasons, the motion to strike is denied as to count VI, and granted as to count VIII.
Clarance J. Jones, Judge