GUY W. BEARDSLEY, Appellant, *v.* WILLIS S. KILMER et al., Respondents.

**Torts — when inherently lawful act not actionable because partly induced by malice — where purposes are partly legitimate there is no liability — when employee may maintain an action for damages suffered through failure of employer caused solely by malicious competition — limitation of actions — no recovery where it appears that competing business was established partly for legitimate purposes.**

1. The genesis which will make a lawful act unlawful must be a malicious one unmixed ·with any other and exclusively directed to injury and damage of another. Where there are also legitimate purposes there is no liability. Authorities collated and discussed.

2. In an action alleging the formation of a conspiracy to injure plaintiff and seeking to recover damages for his loss of position and compensation, as the result of the failure of a newspaper upon which he was employed, caused, as alleged, by the conduct of defendants in starting another newspaper solely with the malicious and unlawful purpose of injuring plaintiff's paper, a contention that plaintiff has no cause of action because the wrong was directed against the paper and that his loss was indirect and remote cannot be sustained.

3. Though the competing newspaper was started in 1904 this action, commenced in 1914, is not barred by the six-year Statute of Limitations where the loss of position and compensation complained of did not occur until 1910.

4. Where, in such an action, a jury might be permitted to say, from the evidence, that one of the purposes of defendants in establishing their newspaper was to punish and take revenge upon plaintiff, but it also appears, without contradiction, that defendants also had the purposes in establishing their newspaper to protect themselves from the plaintiff's attacks and to establish a perfectly legitimate business enterprise which might be a source of profit to them and of benefit to the community, defendants cannot be held liable for the damages which plaintiff suffered because the paper upon which he was engaged failed under the competition of the new paper.

*Beardsley* v. *Kilmer*, 200 App. Div. 378, affirmed.

(Argued March 7, 1923; decided May 29, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department,

entered April 10, 1922, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court at a Trial Term.

*Frederick Collin* and *Halsey Sayles* for appellant. The evidence permitted the finding of fact that the defendants established and issued the newspaper, the Binghamton *Press*, with the desire and the intent and purpose, single and unmixed with another, of destroying the publication of the newspaper, *Evening Herald*, and thereby the business of the plaintiff, and thereby accomplished those results. (*Kraus* v. *Birnbaum*, 200 N. Y. 130; *People* v. *Van Tassel*, 156 N. Y. 561; *People* v. *Peckens*, 153 N. Y. 576; *South Side Lumber Co.* v. *Eller Lumber Co.*, 161 Wis. 399; *Patnode* v. *Westenhaver*, 114 Wis. 460; *Dupree* v. *Thornton*, 97 Neb. 812; *Calcutt* v. *Gerig*, 271 Fed. Rep. 220; *Hutchins* v. *Hutchins*, 7 Hill, 104; *Boston* v. *Simmons*, 150 Mass. 461; *Van Horn* v. *Van Horn*, 52 N. J. L. 284; *Ratcliffe* v. *Walker*, 117 Va. 569.) The establishing and issuing of the Binghamton *Press* by the defendants out of the pure desire and with the single and exclusive intent and purpose of destroying the publication of the *Evening Herald* and thereby the business of the plaintiff was in law not competition nor a lawful act, and was an unlawful and tortious act against the plaintiff, and, causing damage to him, constituted a cause of action in his favor against the defendants. (*Carlson* v. *Carpenters' Cont. Assn.*, 137 N. E. Rep. 222; *Posner Co.* v. *Jackson*, 223 N. Y. 325; *Tuttle* v. *Buck*, 107 Minn. 145; *Panton* v. *Holland*, 17 Johns. 92; *Davis* v. *U. P. Hoisting Engineers*, 28 App. Div. 396; *Roseneau* v. *Empire Circuit Co.*, 131 App. Div. 429; *Davis* v. *New England Railway Pub. Co.*, 203 Mass. 470; *Pratt* v. *British Medical Assn.*, [1919] 1 K. B. 244; *Gibson* v. *Fidelity & Casualty Co.*, 232 Ill. 49; *Doremus* v. *Hennessy*, 176 Ill. 608; *London Guarantee Co.* v. *Horn*, 206 Ill. 493; *Walker* v. *Cronin*,

6

107 Mass. 555.)    The action is not barred by the pleaded
Statute of Limitations.    (*Ludlow* v. *H. R. Railroad Co.*,
6 Lans. 128; *Colman* v. *Loeper*, 94 Neb. 270; *Gillon* v.
*Boddington*, 1 Camp. 541; *Roberts* v. *Read*, 16 East, 215;
*McConnell* v. *Kibbe*, 33 Ill. 175, 180; *Harper* v. *Harper*, 252
Fed. Rep. 39; *Hogan* v. *Wolf*, 10 N. Y. Supp. 896; *Willson*
v. *N. Y. C. & H. R. R. R. Co.*, 146 N. Y. Supp. 208;
*Culver* v. *Chicago, etc., R. Co.*, 38 Mo. App. 130; *Von Dorn*
v. *Rubin*, 104 Neb. 465; *Bockman* v. *Ritter*, 52 N. E.
Rep. 100; *Eliot* v. *Lawton*, 7 Allen, 274.)

*Lewis E. Carr* and *Thomas J. Keenan* for respondents.
The evidence produced by the appellant was not sufficient
to justify or support a finding that the respondents, by
themselves, or with the aid of Jonas M. Kilmer, now
deceased, entered into and carried out a conspiracy
against the appellant whereby he was, by unlawful means,
deprived of his property and damaged as alleged in the
complaint.    (*Buffalo Lubricating Co.* v. *Everest*, 30 Hun,
586; *Lee* v. *Kendall*, 56 Hun, 610; *Verplanck* v. *Van
Buren*, 76 N. Y. 247; *Von Au* v. *Magenheimer*, 126 App.
Div. 257; *Dalury* v. *Rezinas*, 183 App. Div. 456; *A. & C.
P. R. Co.* v. *Douglas*, 9 N. Y. 444; *Kipp* v. *Youmans*, 86
N. Y. 324; *Phelps* v. *Nowlan*, 72 N. Y. 35; *Morris* v.
*Tuthill*, 72 N. Y. 575; *Rush Banks* v. *Easton Ry. Lumbering
Co.*, 11 L. R. A. [N. S.] 485; *Passaic Print Works* v. *E. &
W. Dry Goods Co.*, 105 Fed. Rep. 163.)    The nonsuit was
properly granted, as the evidence failed to show an unlaw-
ful act of either respondent at any time within six years
preceding the commencement of this action.    (*Lee* v.
*Kendall*, 56 Hun, 610; *Buffalo Lubricating Oil Co.* v.
*Everest*, 30 Hun, 588; *Verplanck* v. *Van Buren*, 76 N. Y.
247; *Greene* v. *Davies*, 182 N. Y. 499; *Brackett* v. *Griswold*,
112 N. Y. 454; *Von Au* v. *Magenheimer*, 126 App. Div.
257; 196 N. Y. 510; *Bird* v. *Post*, 124 App. Div. 902;
*Cohen* v. *Fisher*, 135 App. Div. 238; *Oakes* v. *Oakes*, 55
App. Div. 576; 167 N. Y. 625; *Dalury* v. *Rezinas*, 183

App. Div. 456.)   The damages the appellant claimed and sought to recover in this action were not the direct result of the things he alleged the respondents agreed upon and did in the execution of their agreement.   His action for that reason failed and his complaint was properly dismissed.   (*Niles* v. *N. Y. C. R. R. Co.*, 176 N. Y. 119; *Von Au* v. *Magenheimer*, 126 App. Div. 257; 196 N. Y. 510.)

HISCOCK, Ch. J.   For many years prior to 1904 the defendant Kilmer and his father were the substantial proprietors, first, under the form of a partnership and, thereafter, of a corporation in the city of Binghamton of a very profitable business engaged in manufacturing a patent medicine known as " Swamp Root." The defendant Hadsell was associated with them in the business having a small interest therein.   In 1895 the plaintiff became the general manager of a paper known as the *Evening Herald* and which was owned by a corporation known as the Herald Company.   A few years later he became a majority holder of the stock of said corporation and so continued until the discontinuance of the paper in 1910.

For some reason not disclosed in the evidence the *Herald* under the management of plaintiff devoted considerable attention to the Kilmers and their affairs. Many articles were published concerning them and while erroneously and disadvantageously for the defendants, although on their objection, many of these articles were kept out of the evidence, it sufficiently appears that they were not complimentary to the Kilmers and that at least one or more of them were devoted to casting ridicule upon the medicine which they were manufacturing.   As the result of these articles the Kilmers and especially the defendant became much incensed at plaintiff and, while they showed a perfect readiness to forget bygones if the *Herald* would cease what were regarded as unwarranted attacks, they on the other hand repeatedly threatened in

effect to drive the *Herald* and plaintiff out of business if such attacks were not stopped. The plaintiff refused to change his course and in 1904 the Kilmers and Hadsell did as they had threatened and started a new newspaper in Binghamton known as the Binghamton *Press*. The managers of this new paper hired and attempted to hire employees then working for the *Herald* and attracted away from that paper to itself subscribers and advertisers. The result of it all was that plaintiff was compelled from time to time to reduce the compensation which he had been receiving and in 1910 the *Herald* went out of business and he lost his place.

Evidence was given by various witnesses that in addition to and in connection with the threats made by the Kilmers to injure the business in which plaintiff was engaged they gave other reasons and purposes leading to the establishment of their paper. One witness stated that defendant Kilmer claimed he had been connected with the newspaper business for a number of years and was thoroughly conversant with it and proposed to go into the Binghamton newspaper field with the Binghamton *Press* and to make it the best paper in the city, " one that would dominate its field." To another witness Mr. Kilmer stated: " that he could not stand that abuse (of the plaintiff) any longer  *  *  *  that a person had no defense against attacks of a newspaper except to own a paper and control it," and again that he was " going to give Binghamton the best paper in the state outside of the large cities." And again he said that the *Herald* " said unfair things about him  *. *  *  that he always wanted to have a newspaper  *  *  *  and he thought that Binghamton would appreciate a good newspaper *  *  *  and he wanted to give Binghamton the best paper in the state of New York." And on still another occasion the other Kilmer stated that the plaintiff had treated his son and himself " shamefully, scurrilously, scornfully, and had continued to do it."

There is no evidence or claim that the paper founded by respondents was not an enterprising, creditable and reputable paper, or that it was unsuccessful or unprofitable. It was continued by the original owners for about two years after the *Herald* suspended and then the defendant Kilmer sold his interest to the other defendant who had been associated in its management from the commencement and who so far as appears is still publishing it. Neither is there any evidence that defendants in starting and conducting this paper performed any acts which were inherently unlawful. While there is the evidence to which we have alluded that employees were hired away from the *Herald* and that subscribers and advertisers were attracted from it to the new newspaper there is no proof that any methods forbidden by law were adopted to accomplish these purposes.

Under these circumstances this action was commenced against the defendants, the father having died before the commencement of the action, alleging at considerable length and with much detail the formation of a conspiracy to injure plaintiff and seeking to recover damages for his loss of position and compensation as the result of the failure of the *Herald* and which had been caused by the conduct of defendants in starting the *Press.*

The plaintiff encounters two preliminary questions which will be disposed of very briefly. It is argued that he has no cause of action against defendants for loss of position and compensation sustained as the result of the failure of the *Herald;* that any wrong was directed against the *Herald* and that his loss was indirect and remote; also that any cause of action which he might otherwise have is barred by the Statute of Limitations. Without discussion of these questions we are inclined to think that they should be decided in favor of the plaintiff and we shall so assume for the purposes of this discussion, and this brings us to the consideration of the important question whether defendants are liable for any damages

which plaintiff suffered because the paper upon which he was engaged failed under the competition of the new paper started by defendants. This concededly involves a consideration of motives and of the general question when an inherently lawful act will be held actionable because of the impulses which lead to its performance. The answer to such a question may easily be determined by slight circumstances and we ought to have clearly in mind the facts upon which we are basing our answer in this case.

From the evidence which has been summarized we have no doubt that a jury would have been permitted to say that one of the purposes of the defendants in establishing their newspaper was to punish and take revenge upon the plaintiff for what were regarded as his unjustifiable attacks upon them. But we think it also appears from plaintiff's evidence without contradiction or suspicion of untruthfulness that the defendants had the purposes in establishing their newspaper to protect themselves from the plaintiff's attacks and to establish a perfectly legitimate business enterprise which might be a source of profit to them and of benefit to the community. We see no reason to doubt, but rather the entire situation seems naturally to sustain, the view that defendants also determined to found their paper for the purposes of protection from what they regarded as scandalous and unjust attacks. Every one knows that a newspaper while skirting and keeping safely without the field of actionable liability for libel may still hold a person up to undesirable conspicuousness and unpleasant ridicule. It is an unskillful newspaper man who cannot embody in what purports to be a neutral or even complimentary article some sting or slur which draws down upon its object ridicule and disfavor rather than commendation. Apparently defendants felt that that was plaintiff's object and that their only method of stopping it and protecting themselves was to drive his paper out of business. For the purpose

of justifying this motive we do not think that it is necessary to have it appear that the articles which he published were not justifiable as a matter of news or that defendants were not supersensitive or misguided in their notions that his course was hostile and unfair. We are dealing here with motives. Admittedly the acts of the defendants were inherently lawful and plaintiff's only ground of complaint is that the motives behind their acts were malicious and unjustifiable. Therefore we think that if defendants honestly believed that they were being persecuted under whatever guise and that the only way to stop that persecution was by establishing a paper and driving the other paper out of existence such a purpose of self-protection was not malicious and unlawful but quite the contrary.

We think also that the evidence establishes without contradiction that defendants had in view the establishment of a business enterprise which would be sanctioned by advantages to themselves and by benefit to the community. The plaintiff upon whom rested the duty of showing the motives with which this paper was established gave no evidence of an intent which oftentimes appears to establish an enterprise independent of profits or losses or that it was otherwise than successful, and it does not appear, as in some of the cases hereafter cited, that immediately when the purpose of driving the obnoxious enterprise out of business had been completed, the new one was abandoned. On the contrary, subject only to a change of ownership as between the two defendants occurring two years after the discontinuance of the *Herald,* the paper is still being published. Neither is there any evidence that the defendants were otherwise than sincere in their purpose to give to the community in which it was being established a first class newspaper which would be better than those then in existence and thus to confer upon the community that benefit which accrues from the establishment of any public institution

which is better than those in prior existence. Therefore, if our interpretation of the evidence is correct we have a case where the plaintiff is complaining of and seeking redress for injuries caused by an act which is the product of mixed motives some of which are perfectly legitimate. The question is whether his cause of action can successfully rest upon such a foundation. We feel sure it cannot.

This question of the effect of motives upon the lawfulness of acts is, of course, an interesting one appearing under many phases. In addition to the many decisions which have dealt with it, it has been a favorite subject for discussion by text writers and the authors of articles in law school publications. (1 Cooley on Torts [3d ed.], 143; Bigelow on Torts [3d ed.], 19; 8 Cornell Law Quarterly Review, 141; 22 Columbia Law Review, 665; 30 Yale Law Journal, 156; 32 id. 194; 18 Harvard Law Review, 411.)

We shall not, of course, attempt any extensive review of all these decisions and articles but shall simply state our decision of the answer which should be made to the question here involved and cite some of the authorities which sustain such conclusion.

Even if we should adopt the view taken by plaintiff that the evidence discloses injury to him by an act perfectly legitimate in itself but dictated solely by malicious and unlawful purpose, his position would not be entirely free from difficulty under the decisions of our own state. There are cases which state the rule to be that a lawful act is not made unlawful and actionable because there is a malicious and reprehensible purpose behind it. (*Auburn & Cato Plank Road* v. *Douglass,* 9 N. Y. 444; *Phelps* v. *Nowlen,* 72 N. Y. 39; *Kiff* v. *Youmans,* 86 N. Y. 324.) An examination of these cases, however, does disclose that in some of them at least the proposition thus stated was not strictly necessary to a decision of the case. In addition it is argued by appellant's counsel that much later decisions holding that it is unlawful to induce an

employee to break his contract with an employer and passing upon the rights of labor unions to strike and interfere with the business of employers indicate a change of rule in this state even if it once existed as indicated in the earlier cases cited. (*Lamb* v. *Cheney & Son,* 227 N. Y. 418; *Bossert* v. *Dhuy,* 221 N. Y. 342; *Auburn Draying Co.* v. *Wardell,* 227 N. Y. 1.) We doubt, however, whether these latter authorities are strictly applicable to the question outlined.

It is also fair to state that in other jurisdictions in this country and in England the courts in response to a broader and more equitable vision of the interrelated rights of individuals have tended toward the denial of this proposition that it is lawful to perform an otherwise legal act injuring another when there is no excuse for its performance except the malicious purpose of injury. (*Quinn* v. *Leathem,* [1901] A. C. 495, modifying or distinguishing the earlier case of *Allen* v. *Flood,* [1898] A. C. 177; *Plant* v. *Woods,* 176 Mass. 492 [labor union case]; *Moran* v. *Dunphy,* 177 Mass. 485; 18 Harvard Law Journal, 420, and cases cited; *Flaherty* v. *Moran,* 81 Mich. 52; *London Guarantee & Ac. Co.* v. *Horn,* 206 Ill. 493; *Hutton* v. *Waters,* 132 Tenn. 527; *Wesley* v. *Native Lumber Co.,* 97 Miss. 814; *Boggs* v. *Duncan-Schell Furniture Co.,* 163 Iowa, 106; *Dunshee* v. *Standard Oil Co.,* 152 Iowa, 618; *Tuttle* v. *Buck,* 107 Minn. 145; *Barger* v. *Barringer,* 151 N. C. 433.)

But as we have pointed out we are compelled to disagree with plaintiff's view that the acts complained of were solely the conception and birth of malicious motives and when we do this and decide that there were also legitimate purposes the rule seems to be perfectly well established that there is no liability. The question how far one individual shall be restrained from doing acts which are inherently proper out of respect for the rights of others is bound to be a delicate one. The proposition that a man may not dig a well upon his own land or enter upon

a lawful business is one to be advanced with considerable caution and the cases seem firmly to establish the rule that if he digs a well because he really wants the water or starts the business for personal advantage or gain his neighbor is without remedy however much he suffers, and even though the act may also have been tinged with animosity and malice.

We think also that as a matter of logic and analogy another justifying purpose must be added as one which will exculpate from liability. Justification ought not to rest entirely upon selfishness. Altruism ought to have some place in the consideration of enabling motives, and if one of the purposes is to perform an act or establish a business which will be of benefit to others and give them service not before enjoyed we think such an act ought to confer the same protection as one which looks only to personal and selfish gains.

These views find recent support in one of Mr. Justice HOLMES' epigrammatic phrases which, in a discussion of this general subject, speaks of " disinterested malevolence " and which is supposed to mean that the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another. (*American Bank & Trust Co. v. Fed. Reserve Bank of Atlanta*, 256 U. S. 350.)

The view has been more fully discussed and approved in the following cases as well as being recognized and impliedly acquiesced in in many of those which have already been cited. (*Chesley* v. *King*, 74 Me. 164, 172; *London Guar. & Acc. Co.* v. *Horn, supra; Hutton* v. *Waters, supra; Raycroft* v. *Tayntor*, 68 Vt. 219.) We are quite content to adopt at least the limitation upon liability formulated by these decisions. We think it would be unsafe to go further in fastening an actionable liability upon acts in themselves lawful. We cannot afford to move the law to a stage where any person who, for his own advantage, starts a new business will be compelled to submit to the decision

of a jury the question whether also there was not a malicious purpose to injure some person who is thus brought under a new and disadvantageous competition.

Application of the rule to the particular facts of this case seems easily and clearly to lead to the conclusion that the judgment of the courts below was correct and should be affirmed, with costs.

HOGAN, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur, and McLAUGHLIN, J., concurs in result as follows:

McLAUGHLIN, J. (concurring). I concur in the result. Any act which the law says one has a legal right to do does not become wrongful or actionable, no matter what the motive may be. The motive which actuates is immaterial. (*Auburn & Cato Plank Road Co.* v. *Douglass,* 9 N. Y. 444; *Morris* v. *Tuthill,* 72 N. Y 575; *Kiff* v. *Youmans,* 86 N. Y. 329; *Allen* v. *Flood,* [1898] A. C. 1; Pollock on Torts [11th ed.], 23.)

Judgment affirmed.