ROMAN GURTLER, Respondent, *v.* UNION PARTS MANUFACTURING Co., INC., Appellant.

First Department, April 26, 1955.

*Charles H. Tuttle* of counsel (*Minot & Zasloff,* attorneys), for appellant.

*William Canton* of counsel (*Robert Leon Horn,* attorney), for respondent.

Bastow, J. The defendant's motion to dismiss the complaint has been denied and the legal sufficiency thereof is presented upon this appeal. The action is for slander and it is alleged that the president of the defendant corporation in the presence of certain employees uttered of and concerning the plaintiff the words "Communist. You are a communist" two or three times. No facts are alleged as to the circumstances under which the alleged defamatory words were spoken. In other words, no extrinsic facts are alleged and we have for consideration only these words standing alone.

The complaint contains no allegation of special damage and the question presented is whether or not the words thus spoken are slanderous per se. In our search for an answer to the question, we are required to consider two groups of words that have been held to be slanderous per se. The first group consists of words spoken that charge a person with a punishable crime and the second group consists of words spoken which tend to injure a person in his trade, occupation or profession.

We cannot agree with the contention of the plaintiff that to call one a communist is to charge him with a punishable crime. It is unnecessary to explore at length the argument of the respondent that the words here spoken imputed a violation of the Smith Act (U. S. Code, tit. 18, §§ 2384, 2385). Its inapplicability is shown by the statement in *Dennis* v. *United States* (341 U. S. 494, 502) that "The very language of the Smith Act negates the interpretation which petitioners would have us impose on that Act. It is directed at advocacy, not discussion." The contention of the respondent is further weakened by an examination of the charge of the Trial Judge in the same case. There, in response to defendant's request, it was charged "that you may not find any of the defendants guilty merely by reason of the fact that he is a member of the Communist Party of the United States of America, no matter what you find were the principles and doctrines which were taught or advocated by that Party during the period defined in the indictment." (*United States* v. *Foster,* 9 F. R. D. 367, 392.) The statute itself requires that the member know the purposes of the "society, group or assembly of persons who teach, advocate, or encourage the overthrow or destruction of any such government by force or violence". (U. S. Code, tit. 18, § 2385.)

The complaint contains a series of innuendos pleading the meaning of the alleged defamatory words. Plaintiff alleges that the speaker intended to charge and, in fact, did charge him with knowledge and advocacy of communist principles. Innu-

endo, however, cannot extend the alleged slanderous words by an imagination of a meaning not reasonably apparent from the words themselves. (*Brown* v. *Moore,* 90 Hun 169.) Nor can innuendo give to the words an actionable meaning if there are no other words or extrinsic facts pleaded from which such an actionable meaning can reasonably be inferred. (*Havemeyer* v. *Fuller,* 60 How. Prac. 316.) In the absence of other words or extrinsic facts, plaintiff may not extend the words " You are a Communist " through innuendo to mean that the speaker intended to and did charge him with being " a believer and advocator of Communism." Innuendo may help to explain, but it cannot enlarge, the meaning of words. (Cf. *Stevens* v. *Whelan,* 234 App. Div. 118.)

If the complaint is to be sustained, and so Special Term apparently concluded, it must be upon a finding that the words spoken tended to injure plaintiff in his profession and upon the further finding, which Special Term apparently did not consider, that the words were spoken of plaintiff in his profession. We turn to the complaint and there find allegations that the plaintiff had been employed by the defendant for twelve years as chief engineer. It is further alleged " That the said plaintiff is an engineer by profession, and during his career has been working for a defense plant which is engaged in the manufacture of tools and implements for the Government of the U. S., and on contracts with the Government for secret weapons of war and defense for our Government and other concerns which had contracts with our Government, and, as a result of the false and defamatory words concerning the plaintiff, the plaintiff has been and will be irreparably damaged in his profession and vocation."

When one turns to the decisions passing upon words spoken of another tending to injure him in his trade, occupation, business or profession as being slanderous per se, one finds the boundary lines indistinctly marked and many conflicting decisions impossible of reconciliation.

Curiously, two of the landmark cases relating to the law of slander were libel actions. In each of these (*Sanderson* v. *Caldwell,* 45 N. Y. 398; *Moore* v. *Francis,* 121 N. Y. 199) the court in a general discussion of the law of libel and slander made passing remarks as to the actionability of defamatory spoken words. In the *Moore* case, it was said that " The principle is clearly stated by BAYLEY, J., in WHITTAKER v. BRADLEY (7 D. & R. 649) : ' Whatever words have a tendency to hurt, or are calculated to prejudice a man who seeks his livelihood by any trade

or business, are actionable.' When proved to have been spoken in relation thereto, the action is supported, and unless the defendant shows a lawful excuse, the plaintiff is entitled to recover without allegation or proof of special damage, because both the falsity of the words and resulting damage are presumed '' (p. 204). In the *Sanderson* case, decided twenty years before the *Moore* case, a somewhat broader rule of liability was enunciated. There, the court in dicta stated that spoken words are also actionable per se if they '' impair confidence in his character or ability, when, from the nature of the business, great confidence must necessarily be reposed \* \* \* although not applied by the speaker to the profession or occupation of the plaintiff '' (p. 405). It is significant, however, that the *Moore*. case cites the *Sanderson* case as authority for the narrower rule of liability; namely, that the words spoken must touch the plaintiff in his trade or occupation (p. 206). It does not appear that any appellate court in a slander action has adopted or followed the broad language used in the *Sanderson* case. (See Seelman on Law of Libel & Slander, p. 619.)

It should be emphasized that the words must be spoken in relation to the profession or trade. It does not follow that any words spoken to the disparagement of a professional man will *ipso facto* be actionable per se. Words to be actionable on this ground must touch the plaintiff in his profession or trade. Thus, Seelman states that '' Since such words as ' cheat,' ' dishonest,' ' immoral ' and many others, if *generally* applied are not slanderous per se, but become such if applied to the plaintiff's trade, business or profession, the first rule to be followed is, that such words must have been spoken of plaintiff in his business; they must touch him in his business or office. It is not sufficient that they tend to injure plaintiff in his business, they must have been spoken of him in his business.'' (Seelman on Law of Libel & Slander, pp. 613, 691.) This general rule has been consistently applied to all alleged defamatory words. (Cf. *Hartmann* v. *Winchell*, 296 N. Y. 296, 298; *Kleeberg* v. *Sipser*, 265 N. Y. 87, 91; *Kinney* v. *Nash*, 3 N. Y. 177, 178; *Shakun* v. *Sadinoff*, 272 App. Div. 721; *Stephens* v. *Pattou*, 208 App. Div. 63, 65; *Villemin* v. *Brown*, 193 App. Div. 777, 779; *Kober* v. *Lyle*, 173 App. Div. 655, 656; *Gillespie* v. *Byrne*, 151 App. Div. 703; *Cassavoy* v. *Pattison*, 93 App. Div. 370; *Van Tassel* v. *Capron*, 1 Denio 250, and *Oakley* v. *Farrington*, 1 John. Cas. 130.) The rule is succinctly stated in our decision in *Shakun* v. *Sadinoff* (*supra*, p. 721–722), where we quoted with approval the follow-

ing from Gatley on Libel & Slander (3d ed.), page 61: " Words which directly tend to injure or prejudice the reputation of the plaintiff in the way of any office held by him, or in the way of any lawful profession or trade carried on by him, are actionable without proof of special damage. In such cases, the plaintiff must allege in his statement of claim, and prove at the trial, that he held the office, or carried on the profession or trade, *at the time* when the words complained of were published. He must also allege and prove that the words were spoken in reference to his character or conduct in such office, profession or trade. There must be some reference, direct or indirect, in the words or in the circumstances attending their utterance, which connects the slander with such office or profession or trade. If the words merely impute to the plaintiff some misconduct unconnected with his office, profession, or trade, they are not actionable without proof of special damage: it is not sufficient that they are calculated to injure him therein."

In the instant case, we search the complaint in vain for any allegation of facts showing that the alleged slanderous words were spoken of plaintiff in reference or relation to his profession of engineer. The pleading in guarded language alleges that plaintiff " during his career has been working for a defense plant " engaged in work for the United States Government in the manufacture of tools and on contracts with the Government for secret weapons of war. There is no allegation of such present employment and not even an allegation by way of innuendo that the words were spoken of plaintiff in reference to his profession. Neither are any extrinsic facts pleaded that the words were so spoken.

The lower court refrained from discussing this aspect of the case. It devoted its attention to the question as to whether the charge tended to injure plaintiff in his profession. It reviewed several State and Federal statutes enacted in recent years in our fight against communism and reached the conclusion that " For an engineer ' engaged in the manufacture and sale of machinery, tools, parts and equipment ' to be falsely branded a communist may deprive him of employment opportunities in the reputable establishments in that industry." Parenthetically, we do not understand from the complaint that plaintiff is " engaged in the manufacture and sale " of anything but simply that he was employed as an engineer by a company so engaged. In any event, it seems to us that there was a failure to recognize the distinction between published defamatory words and those

spoken. The line of demarcation is plainly drawn in the concurring opinion of Judge Fuld in *Hartmann* v. *Winchell* (296 N. Y. 296, 303, *supra*) where he wrote that "The common-law action on the case for slander, in its sixteenth-century origin, embraced written as well as oral defamation, and the same rules were applicable to both. Certain classes of words — those charging the commission of a crime, those reflecting on one in his trade or profession, for instance — were held actionable per se, damage being presumed from the nature of the words used. All other defamation was actionable only upon allegation and proof of special damage. The newer tort of libel — adapted by the common-law judges in the latter part of the seventeenth century from the criminal law of libel administered in the Star Chamber — eliminated these refinements as regards written defamation, and made the writing itself presumptive proof of damage."

The oft-quoted words of Chief Judge Cardozo in *Ostrowe* v. *Lee* (256 N. Y. 36, 39) are particularly apt: "The schism in the law of defamation between the older wrong of slander and the newer one of libel is not the product of mere accident (Veeder, The History of the Law of Defamation, vol. 3, Essays in Anglo-American Legal History, 459, 461, 467, 468, 471; Fisher, The History of the Law of Libel, 10 Law Quarterly Review, 158; 1 Street, Foundations of Legal Liability, pp. 291, 292; 8 Holdsworth, History of English Law, p. 365). It has its genesis in evils which the years have not erased. Many things that are defamatory may be said with impunity through the medium of speech. Not so, however, when speech is caught upon the wing and transmuted into print. What gives the sting to the writing is its permanence of form. The spoken word dissolves, but the written one abides and ' perpetuates the scandal '."

In any discussion of the subject of communism it is difficult to divorce ourselves from "the temper of the times [and] the current of contemporary public opinion " (*Mencher* v. *Chesley*, 297 N. Y. 94, 100, per Fuld, J.). It is recognized that to say of the poorest paid laborer that he is a communist may cause him to lose his job and deprive him of employment opportunities. This, however, is not the test. In the absence of special damages, it must be said of him concerning his trade. Unless we are prepared to overrule or ignore certain long-established rules relating to the law of slander, the complaint here under consideration is legally insufficient.

The order appealed from should be reversed, with $20 costs and disbursements, and the motion to dismiss the complaint granted, with costs.

COHN, J. P., BREITEL, BOTEIN and RABIN, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellant, the motion granted, with $10 costs, and judgment is directed to be entered in favor of the defendant dismissing the complaint herein, with costs.