J. Irwin Shapiro, J.
The defendants move to dismiss each of the five causes of action set forth in the complaint upon the ground of insufficiency. The first four are pleaded on behalf of the plaintiff Clifford Steward, and the fifth on behalf of his wife V'eronica Steward.
The first three causes of action are substantially the same; they deal with slanders allegedly uttered by the defendants in June, September and October, 1957. The June utterance was in the -following words: “‘He (meaning plaintiff, Clifford steward) has a police record as long as your arm; he has been arrested *190 many times, and is a notorious character Those of September and October were as follows: “‘He (meaning plaintiff, Clifford steward) has a police record as long as your arm; he has been arrested many times, his name is upon every police blotter in Long Island; and is a notorious character \ ’ ’
Each cause of action also alleges (the first cause by implication and the other two expressly): “ That thereby defendants meant and intended to mean that plaintiff was a criminal, he had committed numerous crimes, was of unsavory reputation and character, unworthy of belief, and one not to do business with, but to be shunned.” Then follow the allegations in each cause of action: “ That the aforementioned words and statements were circulated amongst the automobile trade, associates, banks, finance firms, business acquaintances and friends of plaintiffs, and others, as defendants calculated and intended they would be ” and “ That said words and statements were wholly false and untrue, scurrilous and defamatory, and thereby plaintiff, Clifford steward, was injured in his reputation, credit, good name and business standing, and was a factor in the loss of his position in cliff motors, me. and his income therefrom, and he suffered great pain.and mental anguish, shame and humiliation, all to his damage in the sum of $100,000.00.”
To fully understand the nature of the alleged slanders and their legal effect in this case, it is necessary to consider some of the other allegations contained in the complaint.
Plaintiffs are husband and wife. The corporate defendant conducts and operates a large and extensive distributorship in several States, including New York, for German low-priced automobiles under the brand name Volkswagen. The individual defendant is the president, chief executive officer, director and stockholder of the corporate defendant.
Cliff Motors, Inc., not a party to this action, was organized in the State of New York; plaintiff Veronica Steward, is a 50% stockholder, president and director, and her husband, the coplaintiff, is “an employee who exercised joint control and management of the affairs of the corporation, of all of which defendants had knowledge ’ ’; that .the corporate defendant granted to Cliff Motors, Inc., a franchise as a sales agency and dealer for the sale of Volkswagen automobiles in the Great Neck area of Nassau County, and that Cliff Motors, Inc., enjoyed marked success and had established a good reputation for integrity, honesty and fair business dealings, so that during the times in 1957 mentioned in the complaint its franchise as a Volkswagen sales agency represented a valuable asset worth at least $100,000.
*191 In evaluating the sufficiency of the first three causes of action, the difference between slander and slander per se must be carefully noted. If words are slanderous per se the law presumes damage to reputation and business. (Rager v. McCloskey, 305 N. Y. 75, 79.) By the same token if the words are not slanderous per se, no such presumption exists, and to make the words actionable the complaint must allege special damage. (Weiss v. Nippe, 5 A D 2d 789.)
The first question, therefore, is: Are the words uttered by the defendants in this case slanderous per se? The answer depends on whether or not they come within any one of the three following categories: (1) words which impute some offensive or loathsome disease; (2) words charging a person with a crime involving moral turpitude or which subject the complainant to infamous punishment; (3) words spoken in relation to one’s business or trade and which have a natural tendency to injure him in his business or trade (Moore v. Francis, 121 N. Y. 199; Hume v. Kusche, 42 Misc. 414; Riley v. Baddour, 73 N. Y. S. 2d 140; Seelman, Law of Libel and Slander in the' State of New York, p. 630).
It is obvious that the words here spoken do not come within the first category, for they do not impute to the plaintiff some offensive or loathsome disease; nor do they come within the second category, for the mere charge that plaintiff has a police record does not imply that the arrests — or even the convictions thereon if there were any such — were for crimes involving moral turpitude or which subjected the plaintiff to infamous punishment. (Riley v. Baddour, supra; Brooker v. Coffin, 5 Johns. 188; Seelman, op. cit., supra, pp. 630-633.) The police record, the arrests and the police blotter may all be based upon mere offenses, not even crimes, such as disorderly conduct or vagrancy. There are many categories of offenses and misdemeanors which give one “ a police record ”; which means that the offender ‘ ‘ has been arrested ’ ’ and that his name is upon a “ police blotter.” These, however, are very different from the necessary allegations in a slander action that the words spoken about the plaintiff charge him ‘ ‘ with a crime involving moral turpitude ” or with a crime subjecting him to “ infamous punishment.” It is apparent that the alleged utterances in this case fall far short of the ‘6 crime charge requirements ’ ’ laid down in the slander cases.
This leaves for consideration whether the words here spoken may be deemed to have been uttered in relation to plaintiff’s business or trade and which tended to injure him therein. Although it is averred as a conclusion that plaintiff Clifford *192 Steward “ exercised joint control and management of the affairs of the corporation ”, the complaint makes it clear that he was not a stockholder, officer or director therein — in short, that he was a mere employee. The words uttered to be actionable here must, therefore, have been spoken of him in regard to his employment. It is not sufficient if they merely tended to i/njure Mm therein.
As stated by Seelman, supra (pp. 613, 691), and quoted with approval in Gurtler v. Union Parts Mfg. Co. (285 App. Div. 643, 646, affd. 1 N Y 2d 5): “ It is not sufficient that they tend to injure plaintiff in his business, they must have been spoken of Mm in his business.” (Emphasis supplied.) In Gatley on Libel and Slander (3d ed., p. 61), also quoted with approval in Gurtler (supra, p. 647), we find it to be the rule that: “ There must be some reference, direct or indirect, in the words or in the circumstances attending their utterance, which connects the slander with such office or profession or trade. If the words merely impute to the plaintiff some misconduct, unconnected with his office, profession, or trade, they are not actionable without proof of special damage; it is not sufficient that they are calculated to injure him therein.” (Emphasis supplied.) In Shakun v. Sadinoff (272 App. Div. 721, 722), the court also cited the foregoing quotations from Gatley with approval.
In Hume v. Kusche (42 Misc. 414, supra) the alleged slander was: “ You are dishonest. I came for money and I don’t care whether I injure you in your business or not; you are dishonest, you did Hofmeiser out of $200 which you owed him ”. Of this Gaynob, J., said (42 Misc. 415): “They [the words] do not touch him in his skill or credit as a tailor. Moreover, there is no allegation in the complaint that the words were spoken of him in the way of his business; and that is essential. (Odgers, Bigelow’s ed. p. 64).”
There is no allegation in the instant complaint, nor any inference fairly deducible therefrom, that the defendants’ utterances were spoken of plaintiff “ in his business ” or as an “ employee ” of Cliff Motors, Inc. The fact that defendants’ statements “ impute to the plaintiff some misconduct ” is “ not actionable without proof of special damage ” since there is nothing “ which connects the slanders with ” plaintiff’s “ profession or trade.”
Since under the authorities the utterances charged to the defendants in the first three causes of action are not slanderous per se, they are insufficient as causes of action for slander without appropriate allegations of special damage. (Weiss v. Nippe, supra; Gurtler v. Union Parts Mfg. Co., supra; Shakun v. Sadinoff, supra; Hyatt v. Salisbury, 207 Misc. 785.)
*193 The plaintiff contends that paragraphs Thirteenth and Fifteenth of his complaint sufficiently allege special damage. In substance those allegations are to the effect that by reason of the utterances ‘‘ he was injured in his reputation, credit, good name and business standing and was a factor in the loss of his position in Cliff Motors, Inc., and his income therefrom.” Such general statements fall short of setting forth a detailed showing that the alleged slanders actually caused him pecuniary damage and the nature thereof. The conclusory claim that the utterances were 11 a factor in the loss of his position in Cliff Motors, Inc., and his income therefrom ’ ’ hardly suffices as a statement of special damage.
In King v. Sun Print. & Pub. Co. (84 App. Div. 310, affd. 179 N. Y. 600) it was alleged, “ That by reason of the premises the plaintiff has been injured in his reputation and credit personally and in respect to the publication of the work of art specified in the previous paragraphs and in respect to his general business as publisher, by reason of said premises, and has been prevented, and will be prevented from procuring subscriptions for and making sales of said various publications and has had and will have the effect of ruining said businesses, all to his damage in the sum of fifty thousand ($50,000) dollars.”
The court said (84 App. Div. 311): “ This is not a sufficient allegation of special damage to enable plaintiff to maintain the action, within the authorities [citations], and, therefore, the demurrer was properly sustained. How or in what way the plaintiff has been damaged in respect to the publication of the work of art referred to, or in his general business prevented or will be prevented from procuring subscriptions, or how or in what way the publication has had or will have the effect of injuring his business, is not stated. To recover special damages these facts must be specifically alleged in the complaint and proved at the trial; and in the absence of allegations of such facts we do not think the complaint states a cause of action.” In Reporters’ Assn. v. Sun Print. & Pub. Assn. (186 N. Y. 437, 442) the Court of Appeals said: “ Under the settled rule, whenever special damage is claimed, the plaintiff must state it with particularity, in order that the defendant may be enabled to meet the charge.”
It is obvious that the allegations of damage in this case are too general to constitute averments of special damage. Moreover, there is yet another reason why they may not be deemed proper items of special damage, for, as stated by Mr. Seelman at page 683 of his work on the Law of Libel and Slander in the State of New York: “ The special damage must follow as the natural *194 immediate and legal consequence of the defendant’s utterance. Evidence, that witness’ firm took away business on report, was held properly rejected; and while the nonsuit was set aside, because no special damage was necessary, still there is no doubt that the testimony that defendant told a witness, who told a bank cashier, who refused to discount plaintiff’s paper, was not the proximate immediate result, but the result of independent acts of others. Nor may witness tell that he took away patronage from a lawyer, when he heard a report that plaintiff had assaulted a third party, but the damage must come from defendant’s words directly. The damage must not only be pecuniary, but the natural proximate result of the speaking, and not remote and possible consequences.” (Emphasis supplied.)
Although there is an allegation in each of the first three causes of action herein that the alleged slanderous statements “ were circulated amongst the automobile trade, associates, banks, finance firms, business acquaintances and friends of plaintiffs and others, as defendants calculated and intended they would be,” the pleader was very careful not to allege that it was the defendants, or either of them, who circulated the alleged defamatory utterances. The Court of Appeals held in Schoepflin v. Coffey (162 N. Y. 12, 17): “that one who utters a slander * * * is not responsible for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control who thereby make themselves liable to the person injured, and that such repetition cannot be considered in law a necessary, natural and probable consequence pf the original slander or libel.”
It follows that the first three causes of action are insufficient in law on their face.
We turn now to the fourth cause of action, which, inter alia, alleges that in pursuance of a preconceived purpose, campaign, conspiracy and scheme of causing plaintiff Clifford Steward extensive harm and prejudice, defendants threatened plaintiffs that if they did not remove from said plaintiff joint control and management of the affairs of Cliff Motors, Inc., and place them in the other stockholder Sidney Auslander, and then finally terminate the employment of said plaintiff, they, the defendants would so drastically reduce the allocation of automobiles to Cliff Motors, Inc., as to render its franchise of little value, if it did not indeed deprive the corporation altogether of its franchise, and that pursuant thereto, defendants actually did reduce such allocation of automobiles to a negligible number; that submitting to the demands and pressure of the defendants and in a desire to save the business pf Cliff Motors, Inc., and the value *195 of its franchise, and having no other reasonable alternative, there was taken away from said plaintiff the joint control and management of the affairs of the corporation, and the same were placed with the other stockholder Anslander, and finally the employment of said plaintiff Clifford Steward was terminated altogether. The complaint then reiterates the alleged slanders set forth in the first three causes of action and concludes that by reason of such utterances plaintiff was “ caused injury and damage to his reputation, credit, good name and business standing, and was a factor in the loss of his position in Cliff Motors and his income therefrom.”
The defendants label this alleged cause of action as an effort to set forth a “ prima facie tort.” Plaintiff does not agree with that label and says that his cause of action is to recover for ‘1 the doing of something maliciously and the inflicting of intentional harm without legal excuse or justification.” The law, of course, is not interested in mere nomenclature. (Knapp Engraving Co. v. Keystone Photo Engraving Corp., 1 A D 2d 170.) A name is not important, for “New and nameless torts are being recognized constantly ”. (Prosser, Torts [2d ed.], p. 3.)
If the defendant is correct, and this (the 4th) cause of action is an attempt to plead a prima facie tort, it suffers from the same defect as the first three causes of action, namely, a failure to properly plead special damage, which is an essential ingredient in this type of action. (Brandt v. Winchell, 283 App. Div. 338, 342; Ruza v. Ruza, 286 App. Div. 767.)
However, accepting at face value plaintiff’s characterization that it charges defendants with the malicious infliction of intentional harm without legal excuse or justification, the plaintiff finds himself in no better position, and for the same reason. As was stated in Selkowe v. Bleicher (286 App. Div. 1095): “ The first cause of action, whether considered as attempting to charge defendant with slander or with the infliction of intentional injury by means of the malicious circulation of oral falsehoods, is insufficient for failure to allege that plaintiff suffered any special damage.”
In addition, the plaintiff Clifford Steward has not alleged that he had a contract with Cliff Motors, Inc., which gave him any definite or specific rights of employment. If his employment was* terminable at will, he was deprived of no rights cognizable at law, for a party may not maintain an action to recover damages against one who has induced his employer to terminate his employment in the absence of a showing of a contract giving film certain definite rights for a definite period of time. (Posner
*196 Co. v. Jackson, 223 N. Y. 325.) “ The inducing cause for the employer’s exercise of his option is deemed immaterial, as no right of action based upon a mere termination exists ’ ’. (Luisoni v. Barth, 2 Misc 2d 315, 318.) It is not alleged that defendants induced, or persuaded, or coerced Cliff Motors, Inc., to breach its contract of employment with the plaintiff. The only inference that may fairly be drawn from the allegations of the complaint is that defendants, through the means recited, induced Cliff Motors, Inc., to exercise a right of termination which was legally resident in it. Such conduct does not give rise to a cause of action. (Hornstein v. Podwitz, 254 N. Y. 443, 448; Squibb & Sons v. Shapiro, Inc., 64 N. Y. S. 2d 368.)
Moreover, to constitute a conspiracy there must be an agreement (United States v. Kissel, 218 U. S. 601, 608) —“an agreement between two or more persons to do an unlawful act.” (Dalury v. Resinas, 183 App. Div. 456, 459, affd. 229 N. Y. 513.) The corporate defendant herein is chargeable, according to plaintiffs, with the acts of the individual defendant because the latter was its alter ego and acted as its agent in the utterances complained of. Since the corporation can act only through its duly elected directors or duly appointed officers, the plaintiffs have in effect sought to charge the corporate defendant with conspiring with itself.
Absent a conspiracy, the basic cause of action attempted to be set forth is one for damages resulting from the slander itself. That being the case, and there being a specific tort, to wit, a slander action to “ account for all the damages sustained ” (Ruza v. Ruza, supra), we come back to the original insufficiency in the first three causes of action, to wit, the failure to allege special damage.
This cause of action too, is, therefore, insufficient on its face.
The fifth cause of action is asserted by the plaintiff, Veronica Steward. It repeats each of the allegations of her husband’s four causes of action and alleges additionally that defendants further threatened her that unless within 24 hours she parted with her stock interest in Cliff Motors, Inc., and transferred it to the other stockholder, and she and her husband severed all connections with the corporation, they, the defendants, would destroy the value of its franchise, if not deprive it of such franchise altogether; 1 ‘ that having no reasonable alternative and desiring to salvage for herself something out of the true value of the franchise and business of Cliff Motors, Inc., the plaintiff submitted to the demands, threats and pressure exerted and imposed by defendants, and she so complied with them, and on October 17,1957, she transferred to Sidney Auslander her entire *197 stock interest in Cliff Motors, Inc., and resigned as president and director, and she and her husband severed all connection whatsoever with said corporation for a small and inconsequential consideration — only a fraction of what her shares would ordinarily be worth. ’ ’
In substance plaintiff Veronica Steward thus claims that by reason of economic duress or coercion practiced upon her by defendants she sustained damage.
In Manno v. Mutual Benefit Health & Acc. Assn. (18 Misc 2d 80, 82), this court said: “ Generally, it is not duress to do or threaten to do what one has the legal right to do (Dunham v. Griswold, 100 N. Y. 224, 226; 30 East End v. World Steel Prods. Corp., 110 N. Y. S. 2d 754, 757; 17A Am. Jur., Duress and Undue Influence, § 18). Similarly, a threat to breach a contract does not, without more, constitute duress (Doyle v. Rector of Trinity Church, 133 N. Y. 372, 377; Clasen v. Doherty, 242 App. Div. 502, 503; Halperin v. Wolosoff, 282 App. Div. 876; 17A Am. Jur., Duress and Undue Influence, § 17).”
From all that appears in the complaint the defendants were doing nothing except what they had a legal right to do, and thus, ordinarily, no cause of action would accrue to the plaintiff by reason of such actions on the part of the defendants. However, says the plaintiff in her memorandum of law, “ the foregoing allegations charge intent to inflict harm by a series of acts — all without excuse or justification, and that the damage suffered was the result of defendants ’ intentional acts, for which plaintiff is entitled to redress — therefore, the fifth cause of action contains sufficient facts.”
It is apparent that what the plaintiff Veronica Steward is attempting to do is to plead an action for damages in prima facie tort. In such a cause of action one “ should confine his pleadings to allegations of fact and averments of special damage limited to this tort and eliminate any statement of wrongdoing and injury appropriate to one or more of the traditional torts. ’ ’ (Brandt v. Winchell, 283 App. Div. 338, 342-343, supra.)
In this case the plaintiff has commingled her allegations, tending to claim “ prima facie tort ” with the recognized traditional tort of slander. While that would bring about the joinder of two causes of action in one, it would not be fatal to the sufficiency of the cause itself. We must, therefore, consider whether there are sufficient allegations to act as a basis for such a cause of action. The basis of an action in prima facie tort, ‘ ‘ is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful. The need for the doctrine of prima facie *198 tort arises only because the specific acts relied upon — and which it is asserted caused the injury — are not, in the absence of the intention, to harm, tortious, unlawful, and therefore, actionable.” (Ruza v. Ruza, 286 App. Div. 767, 769, supra; emphasis supplied.)
In an effort to plead the allegations necessary in this type of action, the plaintiff, Veronica Steward, alleges that the acts complained of by plaintiff were performed ‘ ‘ by the defendants out of their malice towards plaintiff and her husband and out of defendants’ desire and intent to cause plaintiff and her husband injury and damage to as great an extent as possible.”
The question of whether, and when, and to what extent, acts,, otherwise lawful, are subject to condemnation by a judgment for damages has had a long and evolutionary history. The last, word has, no doubt, not yet been written on the subject. Originally, when the theory of what is now called prima facie tort; was urged it was held in New York and elsewhere that any act; which the law says one has a légal right to do does not become; wrongful or actionable no matter what the motive may be.. (Auburn & Cato Plank Road Co. v. Douglass, 9 N. Y. 444; Morris v. Tuthill, 72 N. Y. 575; Kiff v. Youmans, 86 N. Y. 324; Allen v. Flood, [1898] A. C.1*, Pollock, Torts [11th ed.], p. 23.)
In Beardsley v. Kilmer (236 N. Y. 80), the court, in speaking; of the plaintiff’s contention there, and citing the three New York cases immediately above set forth, said (p. 88): “Even if we) should adopt the view taken by plaintiff that the evidence discloses injury to him by an act perfectly legitimate in itself but dictated solely by malicious and unlawful purpose, his position would not be entirely free from difficulty under the decisions of our own state. There are cases which state the rule to be that a lawful act is not made unlawful and actionable because there is a malicious and reprehensible purpose behind it.”
*199 The Beardsley case (supra, p. 89) then went on to state: “ It is also fair to state that in other jurisdictions in this country and in England the courts in response to a broader and more equitable vision of the interrelated rights of individuals have tended toward the denial of this proposition that it is lawful to perform an otherwise legal act injuring another when there is no excuse for its performance except the malicious purpose of injury. (Quinn v. Leathem, [1901] A. C. 495, modifying or distinguishing the earlier case of Allen v. Flood, [1898] A. C. 177; Plant v. Woods, 176 Mass. 492 [labor union case]; Moran v. Dunphy, 177 Mass. 485; 18 Harvard Law Journal, 420, and cases cited; Flaherty v. Moran, 81 Mich. 52; London Guarantee & Ac. Co. v. Horn, 206 Ill. 493; Hutton v. Waters, 132 Tenn. 527; Wesley v. Native Lumber Co., 97 Miss. 814; Boggs v. Duncan-Schell Furniture Co., 163 Iowa, 106; Dunshee v. Standard Oil Co., 152 Iowa, 618; Tuttle v. Buck, 107 Minn. 145; Barger v. Barringer, 151 N. C. 433.) ”
After thus discussing the state of the law in New York at that time (1923), the court concluded (p. 89) that, giving him the benefit of the most favorable view of the law, plaintiff could not, in any event, recover, “ we are compelled to disagree with plaintiff’s view that the acts complained of were solely the conception and birth of malicious motives and when we do this and decide that there were also legitimate purposes the rule seems to be perfectly well established that there is no liability.” (Emphasis supplied.)
It is quite evident here that the defendants, having granted a franchise to Cliff Motors, Inc., had a vital interest in the proper operation and maintenance of that franchise. If they believed —whether justifiably or unjustifiably — that the business of Cliff Motors, Inc., would be enhanced and that more Volkswagens would be sold with the severance by the plaintiffs of their connection with that corporation, then spite or malice was not the sole motive for their actions, and if that be the case, since “ there were also legitimate purposes the rule seems to be perfectly well established that there is no liability.”
In American Bank & Trust Co. v. Federal Bank (256 U. S. 350, 358), Mr. Justice Holmes, in discussing this rule, spoke of it as “ disinterested malevolence” — “ which is supposed to mean that the genesis which will make a lawful act unlawful must be a malicious one unmixed with any other and exclusively directed to injury and damage of another. ” (Beardsley v. Kilmer, supra, p. 90.)
In Beardsley, the plaintiff attempted to set forth a cause of action against, defendant for his having started a newspaper with *200 the malicious intent and purpose, among other things, of causing the paper with which plaintiff was connected to lose circulation and thus cause plaintiff to lose his job. The result of the starting of the paper by defendant, and its alleged various malicious actions while running the same, “ was that plaintiff was compelled from time to time to reduce the compensation which he had been receiving and in 1910 the Herald went out of business and he lost his place.” Said the court (pp. 86-88) in denying plaintiff a recovery: “ From the evidence which has been summarized we have no doubt that a jury would have been permitted to say that one of the purposes of the defendants in establishing their newspaper was to punish and take revenge upon the plaintiff from what were regarded as his unjustifiable attacks upon them. But we think it also appears from plaintiff’s evidence without contradiction or suspicion of untruthfulness that the defendants had the purposes in establishing their newspaper to protect themselves from the plaintiff’s attacks and to establish a perfectly legitimate business enterprise which might be a source of profit to them and of benefit to the community. * * * Therefore, if our interpretation of the evidence is correct, we have a case where the plaintiff is complaining of and seeking redress for injuries caused by an act which is the product of mixed motives some of which are perfectly legitimate. The question is whether his cause of action can successfully rest upon such a foundation. We feel sure it cannot.”
In the evolution of this type of action it has now become settled law that “ prima facie, the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law, * * * requires a justification if the defendant is to escape.” (Mr. Justice Holmes, in Aikens v. Wisconsin, 195 U. S. 194, 204, quoted with approval in Opera On Tour v. Weber, 285 N. Y. 348, 355 and Advance Music Corp. v. American Tobacco Co., 296 N. Y. 79, 84.)
In the Advance case (supra, p. 83) the court said: “ Thus in sum and substance, the second cause of action constitutes a statement to this effect: that defendants are wantonly causing damage to the plaintiff by a system of conduct on their part which warrants an inference that they intend harm of that type. So read, the second cause of action is, we think, adequate in its office as a plaintiff’s pleading.”
The basic distinction between what is permissible and what is impermissible conduct is, we think, well illustrated by the example cited in Al Raschid v. News Syndicate Co. (265 N. Y. 1, 4), where the court said: “ Where one set up a barber shop for the sole purpose of injuring the plaintiff’s business and *201 driving him out of it — the wrongdoer being wealthy and not interested in the business itself — and diverted customers from the plaintiff solely for the accomplishment of his malevolent purpose, an action lies against him. (Tuttle v. Buck, 107 Minn. 145.) ” (Emphasis supplied.)
In Benton v. Kennedy-Van Saun Mfg. & Eng. Corp. (2 A D 2d 27, 29) the court said:
1 ‘ While harm to plaintiff of course followed the successful consummation of defendant’s scheme, it was caused primarily by defendant’s thrust for profits. The complaint alleges that defendant acted ‘ in order for its own benefit to acquire said contracts and profits therefrom ’.
“ It is clear from this and similar allegations that the primary objective of defendant was to take over the potentially profitable work to be performed under plaintiff’s contract. If this were defendant’s purpose, and we may draw no other inference, it did not constitute the malicious and unjustifiable attempt to injure plaintiff that is an essential ingredient in an action for ‘ prima facie ’ tort. Intent to bypass, circumvent, or to destroy plaintiff’s contract there may have been; but if carried out by lawful means motivated chiefly by a desire to make profits, there is no actionable wrong, even though there is a callous disregard of the incidental injury to plaintiff which would necessarily follow. Defendant’s self-interest negatives malice, even though the means employed might be of questionable morality and ethical validity. Competition as such, no matter how vigorous or even ruthless, is not a tort at common law.”
The basic question here, therefore, is whether plaintiff after alleging malice by defendants and conduct and actions taken by them in pursuance thereof, which would ordinarily be sufficient to sustain a cause of action for prima facie tort, has not within the four corners of her complaint shown that, despite their malice, the defendants also had a legitimate business interest in what they did. In other words, that the reasons for their actions were not unmixed and solely the result of spite and malice hut were also motivated hy legitimate business considerations.
It must be apparent from what has been said that the plaintiff’s pleading shows that the defendants, in spite of any possible malicious and unjustifiable motives with which they proceeded, also had some legitimate business interest in the maintenance of the franchise in proper hands and in its commercial growth. Since the complaint itself shows that the actions of the defendants were not “ solely the conception and birth of malicious motives ” which is a condition precedent in order to make “ a *202 lawful act unlawful ’ ’, and since the act complained of 1 2‘ must be a malicious one unmixed with any other exclusively directed to injury and damage of another ” (Beardsley v. Kilmer, supra, p. 90; emphasis supplied), and because the actions of the defendants, as shown by the pleadings, were not ‘ ‘ solely for the accomplishment of [their] malevolent purpose” (Al Raschid v. News Syndicate Co., supra), the plaintiff’s fifth cause of action does not state facts sufficient to constitute a cause of action. Plaintiff, after setting forth all of the essential ingredients of a cause of action for prima facie tort, has negatived her right to recover thereunder because she has herself alleged the excuse and justification which is required “ if the defendant is to escape.” (Aikens v. Wisconsin, supra, p. 204.)
Each and every cause of action set forth in the complaint must, therefore, be dismissed. “ However, in view of plaintiff’s assertions, made through counsel, that he has suffered special damages, he should be permitted to amend his complaint to include an allegation to that effect.” (Gurtler v. Union Parts Mfg. Co., 1 N Y 2d 5, 8, supra.) The plaintiff, Clifford Steward, is, therefore, given leave to serve an amended complaint in connection with the first three causes of action.
In view of the opinion of this court with respect to the fourth and fifth causes of action, they are dismissed, without leave to amend.
Settle order.

 This is one of the famous English “ trilogy ” of eases dealing with this subject. The other two are Mogul S. S. Co. v. McGregor, 21 Q. B. D. 544; 23 Q. B. D. 598; [1892] A. C. 25, and Quinn v. Leathem, [1901] A. C. 495. In 1925, in Sorrell v. Smith, [1925] A. C. 700, 711-712, in summarizing the results of this “trilogy” on the law of England, the court said: “and from these authorities, which I have carefully read and considered, I deduce as material for the decision of the present case two propositions of law, which may be stated as follows: — (1.) A combination of two or more persons wilfully to injure a man in his trade is unlawful and, if it results in damage to him, is actionable. (2.) If the real purpose of the combination is not to-injure another, but to forward or defend the trade of those who entered into' it, then no wrong is committed and no action will lie, although damage to-another ensues. The distinction between the two classes of cases is sometimes expressed by saying that in cases of the former class there is not, white in eases of the latter class there is, just cause or excuse for the action takenF